## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PENNSYLVANIA FAMILY INSTITUTE, INC., et al.,**<br>        **Plaintiffs,**<br><br>        **v.**<br><br>**JOHN R. CELLUCI, et al.,**<br>        **Defendants.** | **CIVIL ACTION NO. 07-1707** |

## MEMORANDUM  AND  ORDER

**Katz, S.J.**                                                                      **May 14, 2007**

       Before the court are Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order (Document No. 2), Defendants' response thereto, Plaintiffs' Proposed Findings of Fact and Conclusions of Law (Document No. 13), Defendants' Proposed Findings of Fact and Conclusions of Law (Document No. 14), Defendants' Witness Narrative Statement (Document No. 15), and the arguments and evidence presented by the parties at the preliminary injunction hearing.  For the following reasons, Plaintiffs' motion will be granted, and the court will issue the preliminary injunction set forth in the attached Order upon Plaintiffs' posting of the required bond of $5,000.

1

### I.  Findings of Fact

1.  *The Canon at Issue.*  Rule 8.2(b) of the Pennsylvania Rules of Professional Conduct declares that "[a] lawyer who is a candidate for judicial office shall comply with the applicable provisions of the Code of Judicial Conduct."  Canon 7B(1)(c) of the Pennsylvania Code of Judicial Conduct reads as follows:

> (1) Candidates, including an incumbent judge, for a judicial office that is filled either by public election between competing candidates or on the basis of a merit system election:
> . . . .
>> (c) should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court; or misrepresent their identity, qualifications, present position, or other fact.

PA. CODE OF JUD. CONDUCT, Canon 7B(1)(c) (2007).  The first two clauses of Canon 7B(1)(c) are at issue in this case.  Plaintiffs designate as the *"pledges and promises clause"* the first clause:  "Candidates . . . for a judicial office . . . should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office"; they designate as the *"commits clause"* the second clause:  "Candidates . . . for a judicial office . . . should not . . . make statements that commit or appear to commit the candidate with respect to

cases, controversies or issues that are likely to come before the court."

2. *The Plaintiffs*.  Plaintiffs in this action are the Pennsylvania Family Institute, Inc. ("PFI"), "a nonprofit, nonpartisan, research and education organization" incorporated in the Commonwealth of Pennsylvania, see Compl. ¶ 7, Exhibit 5, and six residents of Lancaster County, Pennsylvania, who also are candidates for the Court of Common Pleas in Lancaster County in the 2007 judicial elections (the "Candidate Plaintiffs").[1] Id. ¶¶ 8–13, 17.

3. *The Defendants*.  Defendants in this action are all 12 members of the Pennsylvania Judicial Conduct Board ("JCB"),[2, 3] id. ¶ 14, as well as the Chief Disciplinary Counsel of the Pennsylvania Office of Disciplinary Counsel ("ODC"), his Deputy, and the disciplinary counsel in charge of the ODC's Offices

---

[1] The names of these six Plaintiffs are, in alphabetical order:  Jeffrey J. Reich; Howard F. Knisely; Donald R. Totaro; Margaret C. Miller; Jeffrey D. Wright; and Christopher A. Hackman. Id. ¶¶ 8–13.

[2] The Pennsylvania Constitution vests the JCB with the authority to investigate and prosecute any alleged violation of the Code of Judicial Conduct by "a justice, judge or justice of the peace."  See PA. CONST., art. V, §§ 17(b), 18(a)(7); see also 42 PA. C.S.A. § 2105 (2007).

[3] See 42 PA. C.S.A. § 2101(a) (2007) ("In accordance with section 18 of Article V of the Constitution of Pennsylvania, the Judicial Conduct Board shall be an independent board within the Judicial Branch and shall consist of 12 persons selected as provided in this subchapter."). The names of these Defendants – the 12 members of the JCB – are, in alphabetical order:  John R. Celluci, III; Charles A. Clement; Charles J. Cunningham; Cecilia Griffen Golden; Patrick Judge; Edward R. Klett; G. Craig Lord; Charlene R. McAbee; Cynthia N. McCormick; Jack A. Panella; Carolyn W. "Raven" Rudnitsky; and James R. Weaver. See Compl. ¶ 14.

in Districts I, II, III, and IV.[4, 5]  Id. ¶ 15.  All Defendants are being sued in their

official capacities.  Id. ¶¶ 14, 15.

       4. *Plaintiffs' Two Claims*.  Plaintiffs' "Verified Complaint for

Injunctive and Declaratory Relief" consists of two Counts,[6] both of which seek

---

[4] Under the Pennsylvania Rules of Disciplinary Enforcement, the Chief Disciplinary Counsel and his or her assistants have the authority to investigate and prosecute any alleged violation of the Rules of Professional Conduct by "[a]ny attorney admitted to practice law in this Commonwealth," and by "[a]ny attorney who is a justice, judge or magisterial district judge with respect to acts prior to taking office as a justice, judge or magisterial district judge, if the Judicial Inquiry and Review Board declines jurisdiction with respect to such acts."  See PA. R.D.E. 103, 201(a)(1) and (a)(4), 203(a), 207(b).  (The "Judicial Inquiry and Review Board" is now called the "Judicial Conduct Board.")

[5] The names of these six Defendants are, in alphabetical order:  Paul J. Killion (Chief Disciplinary Counsel); Paul J. Burgoyne (Deputy Chief Disciplinary Counsel); Anthony P. Sodroski (District I Office Disciplinary Counsel in Charge); Raymond W. Wierciszewski (District II Office Disciplinary Counsel in Charge); Edwin W. Frese, Jr. (District III Office Disciplinary Counsel in Charge); and Angelea Allen Mitas (District IV Office Disciplinary Counsel in Charge).  Id. ¶ 15.

[6] In support of these two Counts, Plaintiffs allege the following:

[38.  Because of the pledges and promises clause and commits clause,] [j]udicial candidates are unable to make their views known so that the electorate may intelligently evaluate the candidates' personal qualities and their positions on vital public issues before choosing among them on election day.  Judicial candidates cannot tell the public their views on disputed political and legal issues.  By prohibiting judicial candidates from exercising their freedom of speech on legal and political issues of concern to the voters, the pledges and promises clause and commits clause require judicial candidates to withhold essential or important information from the voters as they seek to educate voters and participate fully in democracy.

39.  As a result of the pledges and promises clause and commits clause, although PFI would like to publish and distribute the answers to questions 5, 6, 7, and 8 of the PFI Questionnaire, PFI is now unable to fully exercise their free speech and association rights to receive and publish political information, since the judicial candidates must refuse to answer the questions in the PFI Questionnaire.  Further,

relief under the "free speech" clause of the First Amendment of the United States Constitution,[7] which applies against the States through the Fourteenth Amendment.[8]  Count I's heading declares that "Canon 7B(1)(c)'s 'pledges and promises' clause and 'commits' clause are, on their face, unconstitutionally vague and overbroad, prohibiting and chilling judicial candidates' protected political speech and impinging on Plaintiffs' freedom of speech and association."  See also id. ¶¶ 43–48.  Count II's heading states that "Canon 7B(1)(c)'s 'pledges and promises' clause and 'commits' clause, as applied to the ACTION questionnaire

_____

if PFI publishes the substantive responses it has received to questions 5, 6, 7, and 8, it fears it will expose responsive judicial candidates to discipline.

40.  In addition, the Candidate Plaintiffs, as judicial candidates, are unable to exercise their freedom of speech and right of association because Canons [sic] 7B(1)(c)'s pledges and promises clause and commits clause require judicial candidates to withhold essential or important information from voters.  The Candidate Plaintiffs would like to express their views on various disputed legal and political issues, including by answering the PFI Questionnaire and the ACTION Questionnaire, but will not do so because they fear discipline under the canons.  The Candidate Plaintiffs do not wish to pledge or promise certain results in particular cases or classes or types of cases, but merely wish to announce their views on disputed legal and political issues.  Answering the PFI Questionnaire and ACTION Questionnaire and announcing their views on disputed legal and political issues would not cause the Candidate Plaintiffs to be biased for or against any party and would not prevent them from remaining open-minded on any issue raised in the PFI Questionnaire or ACTION Questionnaire.

Id. ¶¶ 38, 39, 40 (internal citations omitted).

[7]  See U.S. CONST. amend. I ("Congress shall make no law . . . abridging the freedom of speech . . . .").

[8]  See Near v. Minnesota, 283 U.S. 697, 707 (1931).

and the PFI questionnaire, unconstitutionally prohibit and chill judicial candidates' protected political speech and Plaintiffs' freedom of speech and association."[9]  See also id. ¶¶ 49–56.  Plaintiffs request a declaratory judgment holding the "pledges and promises" and "commits" clauses unconstitutional under Counts I and II, as well as injunctive relief,[10] attorney's fees, and costs.

5.  *The ACTION Questionnaire.*  Lancaster County ACTION ("LCA") is an organization that, according to its website, "promote[s] the election of men and women to local, state, and national offices who support the Judeo-Christian principles on which this nation was founded."  See Who Is Lancaster County ACTION?, http://www.lancastercountyaction.org/whoweare.cfm (last visited May 10, 2007).

As part of LCA's effort to prepare a voter's guide for the 2007

_____

[9] In support of their request for injunctive relief, Plaintiffs allege the following:

41.  Immediate and irreparable injury, loss, and damage has occurred and will continue to occur as a result of the application of the pledges and promises clause and the commits clause of Judicial Canon 7B(1)(c) to responses to the ACTION Questionnaire or PFI Questionnaire, or to other announcements of views by judicial candidates, which chill Plaintiffs' free speech and free association rights.

42.  Plaintiffs have no adequate remedy at law.

Id. ¶¶ 41, 42.

[10] Plaintiffs' motion for a preliminary injunction will be ruled upon in a separate Memorandum and Order.

judicial primary election, LCA sent each Candidate Plaintiff a five-question

questionnaire (the "ACTION Questionnaire"), entitled "Primary / 2007 Issues

Survey," and requested a response by April 9, 2006.[11]  See Compl. ¶ 18, Exhibit 3.

According to the Complaint, this questionnaire asked the Candidate Plaintiffs "to

announce their views on several disputed legal and political issues."[12]  Compl. ¶

18.  In a letter dated April 6, 2007, the Candidate Plaintiffs signed a joint response

---

[11] The court suspects that "2006" is a typographical error.

[12] The ACTION Questionnaire reads, in pertinent part, as follows:

**Questionnaire for Judicial Candidates**

Please circle the letter that best represents your position.

**"Y"** – Yes, **"N"** – No, **"U"** – Undecided, **"D"** – Decline to Answer

| | | | | | |
|---|---|---|---|---|---|
| 1.  Do you believe that Roe v. Wade, 410 U.S. 113 (1973), insofar as it recognizes a "right to privacy" that includes abortion under the United States Constitution, was correctly decided? | **Y** | **N** | **U** | **D** | |
| 2.  Rate your judicial philosophy on a scale of 1-5 with "living document" approach being a 1 – strict constitutionalist or 5 – originalist. | **1** | **2** | **3** | **4** | **5** |
| 3.  Do you believe that the Pennsylvania Constitution permits display of the 10 Commandments in courtrooms? | **Y** | **N** | **U** | **D** | |
| 4.  Do you believe that the Pennsylvania Constitution recognizes the right to same-sex marriage? | **Y** | **N** | **U** | **D** | |
| 5.  Do you believe that the Pennsylvania Constitution permits student-led graduation prayers in public schools? | **Y** | **N** | **U** | **D** | |

See Compl., Exhibit 3.

7

to the ACTION Questionnaire that read as follows:

> [In response to questions] 1, 3-5:  All of us, the Endorsed Republican
> Judicial candidates, pledge that, if elected, we will faithfully and
> impartially perform the duties of that office.  Beyond that, Canon
> 7B(1)(c) of the Code of Judicial Conduct prohibits us from
> commenting on or making statements which appear to commit us with
> respect to the issues addressed in these questions.
>
> [In response to question] 2.  All of the Endorsed Republican Judicial
> candidates share a judicial philosophy of strict constructionism in
> which the role of the Court is to enforce the laws as written and not to
> legislate from the bench.

Compl., Exhibit 4; see also id. ¶ 19.  On April 12, 2007, Candidate Plaintiff

Donald R. Totaro sent a letter to the Judicial Ethics Committee of the

Pennsylvania Conference of State Trial Judges, asking whether he was prohibited

by Canon 7B(1)(c) from answering the ACTION Questionnaire.  Id. ¶ 20.  In

correspondence dated April 13, 2007, the Judicial Ethics Committee responded

that it was not authorized to advise whether judicial candidates could respond to

the ACTION Questionnaire.  Id.

      6.  *The PFI Questionnaire.*  Plaintiff PFI, among other things, gathers

information and publishes questionnaires to educate citizens about candidates for

public office.  Id. ¶ 21, Exhibit 5 ("Our goal is to inform the electorate of the

candidates' positions on issues that are important to the voters.").  As part of its

effort to prepare an online voter's guide for the 2007 Pennsylvania judicial

elections, on April 3, 2007, Plaintiff PFI mailed an explanatory cover letter and a

"2007 Pennsylvania Family Institute Voters' Guide Questionnaire for Judicial

Candidates" to every candidate for judicial office in Pennsylvania.  Id. ¶ 22,

Exhibits 5 (explanatory cover letter) and 6 ("PFI Questionnaire").  The letter

requested a reply to the eight-question PFI Questionnaire by April 13, 2007 and

explained that "[w]e will simply report [through a Voter's Guide posted on our

internet website] without comment your responses made to the Questionnaire, as

well as a brief biography (experience, education) and your campaign telephone

number."  Id. ¶ 22, Exhibit 5.  The letter also included the following two

paragraphs:

> As a judicial candidate, we understand that you are subject to the
> Pennsylvania Code of Judicial Conduct.  We believe your responses
> to our Questionnaire are constitutionally protected under *Republican
> Party of Minnesota v. White*, 536 U.S. 765 (2002), which struck down
> on First Amendment grounds a Minnesota Judicial Canon that
> prohibited judicial candidates from "announc[ing] their views on
> disputed legal or political issues."  However, if you remain fearful
> that you may not answer our Questionnaire under the Code of Judicial
> Conduct, then you should seek an advisory opinion from [the
> Pennsylvania Judicial Conduct Board].
>
> Lawyers seeking judicial office are subject to the Judicial Code of
> Conduct, and you may seek an advisory opinion on whether, as a
> lawyer, you may respond to our Questionnaire from [the Pennsylvania
> Lawyers' Disciplinary Board].

Id. Exhibit 5.

The Candidate Plaintiffs received copies of the PFI Questionnaire but did not respond, because they believed that answering some of the questions on the PFI Questionnaire would violate Canon 7B(1)(c).[13] Id. ¶ 23.

───────────────

[13] The PFI Questionnaire reads, in pertinent part, as follows:

**2007 Pennsylvania Family Institute
Voters' Guide Questionnaire for Judicial Candidates**

1.  Which of the following <u>former</u> U.S. Presidents best represents your political philosophy? **(Circle one)**
> **- John F. Kennedy                        - Jimmy Carter**
> **- Ronald Reagan                          - George Bush (former)**
> **- Bill Clinton                                - Undecided**
> **- Decline to Respond Because of Judicial Canons***
> **- Refuse to Answer for Other Reason (describe): _____**

2.  Which one of the <u>current</u> Justices of the U.S. Supreme Court most reflects your judicial philosophy?  **(Circle one)**
> **- Roberts                - Stevens                - Scalia**
> **- Kennedy               - Thomas                - Souter**
> **- Ginsburg              - Breyer                  - Alito**
> **- Undecided**
> **- Decline to Respond Because of Judicial Canons***
> **- Refuse to Answer for Other Reason (describe): _____**

3.  Rate your judicial philosophy on a scale of 1-10 with "living document" approach as a "1" and "strict constitutionalist" or "originalist" as a "10." **(Circle one)**
> **1    2    3    4    5    6    7    8    9    10**
> **- Decline to Respond Because of Judicial Canons***
> **- Refuse to Answer for Other Reason (describe): _____**

4.  Please list the five organizations in which you are most involved as a member, through contributions, and/or through volunteering.
> 1._____
> 2._____
> 3._____
> 4._____
> 5._____
> **- Decline to Respond Because of Judicial Canons***

_____

**- Refuse to Answer for Other Reason (describe):** _____

5.  Do you believe that *Roe v. Wade*, 410 U.S. 113 (1973), insofar as it recognizes a "right to privacy" that includes abortion under the United States Constitution, was correctly or incorrectly decided?  **(Circle one)**
      **- Correctly Decided**      **- Incorrectly Decided**      **- Undecided**
      **- Decline to Respond Because of Judicial Canons***
      **- Refuse to Answer for Other Reason (describe):** _____

6.  Do you believe that the Pennsylvania Constitution permits display of the Ten Commandments in courtrooms?  **(Circle one)**
      **- Yes**      **- No**      **- Undecided**
      **- Decline to Respond Because of Judicial Canons***
      **- Refuse to Answer for Other Reason (describe):** _____

7.  Do you believe that the Pennsylvania Constitution recognizes a right to same-sex marriage? **(Circle one)**
      **- Yes**      **- No**      **- Undecided**
      **- Decline to Respond Because of Judicial Canons***
      **- Refuse to Answer for Other Reason (describe):** _____

8.  Do you believe that the Pennsylvania Constitution permits student-led graduation prayers in public schools?  (Circle one)
      **- Yes**      **- No**      **- Undecided**
      **- Decline to Respond Because of Judicial Canons***
      **- Refuse to Answer for Other Reason (describe):** _____

See Compl., Exhibit 6.  On each page of the PFI Questionnaire, a star footnote (corresponding to the star after the "Decline to Respond Because of Judicial Canons" answer choice) read as follows:

      * By circling this phrase, I hereby attest that I would have replied to this question but for the prospect that I may be disciplined for announcing my views under Canon 7(B)(1)(c) of the Pennsylvania Code of Judicial Conduct, which states that judicial candidates may not "make pledges or promises of conduct in office" or "make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court," and that I may be disciplined for failure to disqualify myself as a judge in any proceeding concerning the issue raised in the question under Canon 3(C)(1), which states that judges must disqualify when their "impartiality might reasonably be questioned." I further attest that responding to this question would neither cause me to be biased for or against parties nor affect my ability to be open-minded with regard to

Twenty-one judicial candidates responded to the PFI Questionnaire.[14]

Id. ¶ 24.  Nineteen returned completed questionnaires; two – M. Lucile Longo,

Esq. and the Honorable Anne E. Lazarus – sent letters instead.[15]  Id.  In a letter

dated April 11, 2007, Ms. Longo declined to answer the PFI Questionnaire,

because she believed "that doing so would violate the Pennsylvania Code of

Judicial Conduct, or its spirit."[16]  Id. Exhibit 7, at 1.  In a letter dated April 19,

2007, Judge Lazarus also declined to answer the PFI Questionnaire and explained

her decision as follows:

> Unfortunately, as a sitting judge and a candidate for the Superior
> Court, I feel it would be inappropriate for me to opine on many of the
> specifics about which you ask.  As a judge, I must review each case
> independently and I believe that by answering a questionnaire I am
> forced to take sides, blurring my view of justice.

---

any issue.

See id.

[14] To summarize the content of these candidates' responses to the PFI Questionnaire, the court does not need to say how each candidate answered each question.  Anyone wishing to obtain that information, however, need only examine the candidates' responses in Exhibit 7 of the Complaint.

[15] Plaintiffs have attached to the Complaint as Exhibit 7 these two letters and seventeen of the nineteen completed questionnaires.

[16] Ms. Longo added that "[a]dditionally, I have sought an advisory opinion from the Pennsylvania Conference of State Trial Judges, Ethics Committee and do not anticipate receiving that opinion prior to your deadline.  I have been advised the process takes approximately thirty days." Id.

Id. at 2.[17]

Of the nineteen candidates who returned completed PFI

Questionnaires, eighteen answered question 1, which asked the candidate to

indicate "Which of the following former U.S. Presidents best represents your

political philosophy?"  Id. ¶ 25, Exhibit 6, at 1.  Only one candidate circled the

answer option "Decline to Respond Because of Judicial Canons*."  Id.  The star

footnote for this answer choice contains the following explanation:

> By circling this phrase, I hereby attest that I would have replied to
> this question but for the prospect that I may be disciplined for
> announcing my views under Canon 7(B)(1)(c) of the Pennsylvania
> Code of Judicial Conduct, which states that judicial candidates may
> not "make pledges or promises of conduct in office" or "make
> statements that commit or appear to commit the candidate with
> respect to cases, controversies or issues that are likely to come before
> the court," and that I may be disciplined for failure to disqualify
> myself as a judge in any proceeding concerning the issue raised in the
> question under Canon 3(C)(1), which states that judges must
> disqualify when their "impartiality might reasonably be questioned."
> I further attest that responding to this question would neither cause
> me to be biased for or against parties nor affect my ability to be open-
> minded with regard to any issue.

Id.  Despite this footnote, "Plaintiffs do not believe, based on [the candidates']

responses and the plain language of the Canons, that judicial candidates are

---

[17] Interestingly, Judge Lazarus went on to write that "[i]mportantly, at a time when too
many have lost faith in our political and judicial systems, I serve as the Chair of the State
Conference of Trial Judges' Ethics Committee, a position that I have had for the last 2 years." Id.

13

prohibited by Canon 7B(1)(c) from answering question 1." Id. ¶ 25.

Two candidates declined to answer question 2, which asked the candidate to indicate "Which one of the current Justices of the U.S. Supreme Court most reflects your judicial philosophy?" Id. ¶ 26, Exhibit 6, at 1. Three candidates declined to answer question 3, which asked the candidate to "Rate your judicial philosophy on a scale of 1-10 with "living document" approach as a "1" and "strict constitutionalist" or "originalist" as a "10,"" id. ¶ 27, Exhibit 6, at 2, and one candidate declined to answer question 4, which asked the candidate to "Please list the five organizations in which you are most involved as a member, through contributions, and/or through volunteering." Id. ¶ 28, Exhibit 6, at 2. These candidates circled the answer option "Decline to Respond Because of Judicial Canons*," the star footnote for which contains the same explanation set forth above. Despite this footnote, "Plaintiffs do not believe, based on [the candidates'] responses and the plain language of the Canons, that judicial candidates are prohibited by Canon 7B(1)(c) from answering" questions 2, 3, or 4 Id. ¶¶ 26, 27, 28.

Seven candidates declined to answer question 5, which asked the candidate to announce his or her views by answering the following question: "Do you believe that *Roe v. Wade*, 410 U.S. 113 (1973), insofar as it recognizes a

"right to privacy" that includes abortion under the United States Constitution, was correctly or incorrectly decided?"  Id. ¶ 29, Exhibit 6, at 2.  Six candidates declined to answer question 6, which asked the candidate to announce his or her views by answering the following question:  "Do you believe that the Pennsylvania Constitution permits display of the Ten Commandments in courtrooms?"  Id. ¶ 31, Exhibit 6, at 3.  Six candidates declined to answer question 7, which asked the candidate to announce his or her views by answering the following question:  "Do you believe that the Pennsylvania Constitution recognizes a right to same-sex marriage?"  Id. ¶ 33, Exhibit 6, at 3.  Six candidates declined to answer question 8, which asked the candidate to announce his or her views by answering the following question:  "Do you believe that the Pennsylvania Constitution permits student-led graduation prayers in public schools?"  Id. ¶ 35, Exhibit 6, at 3.  These candidates circled the answer option "Decline to Respond Because of Judicial Canons*," the star footnote for which contains the same explanation set forth above.  Id. ¶¶ 29, 31, 33, 35.

According to the Complaint, one candidate answered question 5; two candidates answered question 6; two candidates answered question 7; and two

15

candidates answered question 8.  <u>Id.</u> ¶¶ 29, 31, 33, 35.[18]  "However, PFI will not

publish [these] responses, for fear that [the candidates] will be disciplined under

the canons."  <u>Id.</u>  The Complaint further alleges that "the Candidate Plaintiffs

would have answered" questions 5, 6, 7, and 8 on the PFI Questionnaire "but for

the belief that they were prohibited from doing so by Canon 7B(1)(c)."  <u>Id.</u> ¶¶ 30,

32, 34, 36.

       Plaintiff PFI wants to publish the judicial candidates' views on legal

and political issues to educate and inform the citizenry.  <u>Id.</u> ¶ 37.  Moreover,

Plaintiff PFI intends to publish the judicial candidates' responses to the PFI

Questionnaire before the May 15, 2007 primary elections and the November 8,

2007 general and retention elections.  <u>Id.</u>  Plaintiff PFI also intends to publish on

its website the responses of future judicial candidates to identical questionnaires.

<u>Id.</u>

## II.  Conclusions of Law

    1.  "[A] district court may permissibly grant the extraordinary remedy

of a preliminary injunction only if (1) the plaintiff is likely to succeed on the

---

[18] These assertions seem at odds with the completed surveys attached to the Complaint as Exhibit 7, which seem to show that eleven candidates answered questions 5, 6, 7, and 8.  The court, however, need not decide whether to credit the Complaint or Exhibit 7, because the court would reach the same result on either version of the facts.

merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC, 428 F.3d 504, 508 (3d Cir. 2005) (internal quotations omitted). "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." Id.

2. As explained below, Plaintiffs have met their burden on each element of the preliminary injunction test. The court therefore will exercise its discretion and grant Plaintiffs' motion. All Defendants shall be preliminarily enjoined and prohibited from enforcing the "pledges and promises clause" and the "commits clause" of Canon 7B(1)(c) of the Pennsylvania Code of Judicial Conduct against any candidate for judicial office, including an incumbent judge. This preliminary injunction will not issue, however, until Plaintiffs post the required bond of $5,000.

3. *Plaintiffs are likely to succeed on the merits*. In Republican Party of Minnesota v. White, 536 U.S. 765 (2002), the Court held unconstitutional under the First Amendment Canon 5A(3)(d)(i) of the Minnesota Code of Judicial Conduct, "which state[d] that 'a candidate for a judicial office, including an incumbent judge,' shall not 'announce his or her views on disputed legal or

17

political issues.'"  Id. at 768 (quoting MINN. CODE OF JUDICIAL CONDUCT, Canon

5A(3)(d)(i) (2000)).  At the time of the White decision, Canon 7B(1)(c) of the

Pennsylvania Code of Judicial Conduct contained identical language.  On

November 21, 2002, less than five months after White was decided, this language

was replaced by the "commits clause."  Since White, the Supreme Court has not

spoken on the subject of state restraints on judicial campaign speech.[19]

   In the last three years, however, five federal district courts have been

asked to preliminarily enjoin enforcement of, or hold unconstitutional under the

First Amendment, rules of judicial conduct *identical* to the pledges and promises

clause and commits clause of Canon 7B(1)(c) of the Pennsylvania Code of Judicial

Conduct.  See Indiana Right to Life, Inc. v. Shepard, 463 F. Supp. 2d 879 (N.D.

Ind. 2006); Kansas Judicial Watch v. Stout, 440 F. Supp. 2d 1209 (D. Kan. 2006);

Alaska Right to Life Political Action Committee v. Feldman, 380 F. Supp. 2d

1080 (D. Alaska 2005); North Dakota Family Alliance, Inc. v. Bader, 361 F. Supp.

2d 1021 (D.N.D. 2005); Family Trust Found. of Kentucky, Inc. v. Wolnitzek, 345

---

[19] The Canon at issue in White also contained "a so-called 'pledges or promises' clause,
which *separately* prohibit[ed] judicial candidates from making 'pledges or promises of conduct
in office other than the faithful and impartial performance of the duties of the office,' *ibid.* – a
prohibition that [was] not challenged [t]here and on which [the Court] express[ed] no view."  Id.
at 770 (emphasis in original).  In Buckley v. Illinois Judicial Inquiry Bd., 997 F.2d 224 (7th Cir.
1993), however, the Seventh Circuit struck down under the First Amendment an Illinois rule of
judicial conduct that contained a nearly identical "pledges or promises" clause, as well as an
"announce" clause similar to the one held unconstitutional in White.

F. Supp. 2d 672 (E.D. Ky. 2004).  In each of these cases, the court relied on <u>White</u>

to grant the relief sought by the plaintiffs.  <u>See</u> <u>Shepard</u>, 463 F. Supp. 2d at

888–90 (granting plaintiffs' motion for summary judgment and holding

unconstitutional Canon 5A(3)(d)(i) and (ii) of the Indiana Code of Judicial

Conduct); <u>Stout</u>, 440 F. Supp. 2d at 1225–34, 1239 (preliminarily enjoining

enforcement of Canon 5A(3)(d)(i) and (ii) of the Kansas Supreme Court's Rules of

Judicial Conduct); <u>Feldman</u>, 380 F. Supp. 2d at 1082–83 (granting plaintiffs'

motion for summary judgment and holding unconstitutional Canon 5A(3)(d)(i) and

(ii) of the Alaska Code of Judicial Conduct); <u>Bader</u>, 361 F. Supp. 2d at 1037–42

(granting plaintiffs' motion for summary judgment and holding unconstitutional

Canon 5A(3)(d)(i) and (ii) of the North Dakota Code of Judicial Conduct);

<u>Wolnitzek</u>, 345 F. Supp. 2d at 690–705 (preliminarily enjoining enforcement of

Canon 5B(1)(c) of the Kentucky Supreme Court's Code of Judicial Conduct).  The

court is not aware of any federal action where the court reached a different

conclusion with respect to the merits of a similar rule of judicial conduct.[20]

      The five federal district court decisions listed above do not bind this

---

[20] The court is aware of <u>In re Watson</u>, 794 N.E.2d 1 (N.Y. 2003) and <u>In re Kinsey</u>, 842 So.2d 77 (Fla. 2003).  In the context of an appeal from a judicial disciplinary proceeding, <u>Watson</u> upheld New York's version of the pledges and promises clause; in the same context, <u>Kinsey</u> upheld Florida's versions of both the pledges and promise clause and the commits clause.  The court also is aware, however, that both <u>Stout</u> and <u>Wolnitzek</u> persuasively distinguished <u>Watson</u> and <u>Kinsey</u>.  <u>See</u> <u>Stout</u>, 440 F. Supp. 2d at 1232 n.112; <u>Wolnitzek</u>, 345 F. Supp. 2d at 700–01.

court, but the force of their thorough reasoning compels this court to conclude that Plaintiffs have met their burden of showing that they are likely to succeed on the merits of their First Amendment claims.

        4. *Denial of Plaintiffs' motion will result in irreparable harm to Plaintiffs.* Plaintiffs have shown that, if their motion for preliminary injunction is denied, the Candidate Plaintiffs will be too afraid of judicial discipline to be willing to inform the electorate of their answers to the important questions posed in the ACTION and PFI Questionnaires, and that Plaintiff PFI will be unable to receive and publish the political views of the Candidate Plaintiffs and the other candidates who refused to answer the PFI Questionnaire out of fear of discipline under the pledges and promises and commits clauses of Canon 7B(1)(c). Plaintiffs therefore have met their burden of establishing that denial of preliminary injunctive relief will result in irreparable harm to them. See Elrod v. Burns, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); New York Times Co. v. United States, 403 U.S. 713 (1971); Swartzwelder v. McNeilly, 297 F.3d 228, 242 (3d Cir. 2002); see also Elrod, 427 U.S. at 374 n.29 ("The timeliness of

political speech is particularly important.").[21]

   5.   *Granting Plaintiffs' motion in accordance with this Memorandum and Order will not result in irreparable harm to Defendants.*  If the court enjoins Defendants from enforcing the pledges and promises and commits clauses of Canon 7B(1)(c) against judicial candidates, Defendants will not suffer irreparable harm, because they still will be able to enforce Canon 3C(1) of the Pennsylvania Code of Judicial Conduct, which provides that "[j]udges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned."  See Stout, 440 F. Supp. 2d at 1239.  Canons similar, and sometimes virtually identical, to Canon 3C(1) were challenged and upheld on First Amendment grounds in all five of the federal district court decisions cited above,[22]

---

   [21] Pennsylvania's judicial primary elections will take place tomorrow (May 15, 2007), and its general and retention elections will be held on November 8, 2007.  In similar cases, it has been argued that the plaintiffs' inability to receive and publish the protected political speech at issue before the election justifies a finding of no irreparable harm to the plaintiffs.  The court agrees with the reasoning of the courts that have rejected this argument.  See Stout, 440 F. Supp. 2d at 1239 ("Although it is unclear if KJW will be able to publish the answers to the Questionnaire prior to the August 1 primary, they will certainly be able to publish the results prior to the November election if the injunction is granted."); Wolnitzek, 345 F. Supp. 2d at 704–05 ("The two citizen-plaintiffs, however, may be aided by simply having the ability to hear candidates voice their opinions on legal issues, even if the survey is not released in time.  Presumably such dissemination of information could occur in the remaining two weeks, through either informal campaigning, candidate advertisements, or media coverage.  In any event, this short time period does not persuade the Court that injunctive relief should not be granted.").

   [22] See Shepard, 463 F. Supp. 2d at 886–87 (virtually identical canon); Stout, 440 F. Supp. 2d at 1234–35 (similar canon); Feldman, 380 F. Supp. 2d at 1083–84 (similar canon); Bader, 361 F. Supp. 2d at 1043–44 (virtually identical canon); Wolnitzek, 345 F. Supp. 2d at 705–11

and Plaintiffs do not challenge the constitutionality Canon 3C(1) in this case.[23]

Plaintiffs therefore have met their burden of establishing that granting their motion

for a preliminary injunction will not result in irreparable harm to Defendants.

      6.  *Granting the preliminary injunction set forth in the attached*

*Order is in the public interest.*  The public interest will be served greatly by a

preliminary injunction against the enforcement of the pledges and promises and

commits clauses of Canon 7B(1)(c), because allowing Plaintiffs and others

similarly situated to speak freely regarding their own and other judicial

candidates' political views will contribute to a more informed electorate and more

vigorously contested judicial elections.  <u>See</u> <u>White</u>, 536 U.S. at 774 (observing

that speech about the qualifications of candidates for public office is "at the core

of our First Amendment freedoms"); <u>Eu v. San Francisco County Democratic</u>

<u>Cent. Committee</u>, 489 U.S. 214, 223 (1989) ("[D]ebate on the qualifications of

candidates is integral to the operation of the system of government established by

our Constitution."); <u>Brown v. Hartlage</u>, 456 U.S. 45, 60 (1982) ("It is simply not

the function of government to select which issues are worth discussing or debating

---

(similar canon).

    [23] Even if Canon 3C(1) did not exist, Defendants would not be irreparably harmed by a preliminary injunction against enforcement of the pledges and promises and commits clauses of Canon 7B(1)(c), because the injunction would harm the public's interest in an open-minded, impartial judiciary, not Defendants' narrower enforcement interests.

in the course of a political campaign.") (internal citation and quotation omitted).
To the extent that fewer restrictions on judicial candidates' political speech might
threaten the public's interest in an open-minded, impartial judiciary, the court
finds that Pennsylvania's recusal canon – Canon 3C(1) – neutralizes this threat.
Cf. Wolnitzek, 345 F. Supp. 2d at 705. Plaintiffs therefore have met their burden
of establishing that the preliminary injunction they seek is in the public interest.

7. *Pursuant to FED. R. CIV. P. 65(c), the court's preliminary
injunction shall not issue until Plaintiffs' post a bond in the amount of $5,000.*
Federal Rule of Civil Procedure 65(c) reads as follows:

> (c) **Security.** No restraining order or preliminary injunction shall
> issue except upon the giving of security by the applicant, in such sum
> as the court deems proper, for the payment of such costs and damages
> as may be incurred or suffered by any party who is found to have
> been wrongfully enjoined or restrained. No such security shall be
> required of the United States or of an officer or agency thereof.
>
> The provisions of Rule 65.1 apply to a surety upon a bond or
> undertaking under this rule.

FED. R. CIV. P. 65(c). In applying Rule 65(c), the Third Circuit has written:

> Although the amount of the bond is left to the discretion of the court,
> the posting requirement is much less discretionary. While there are
> exceptions, the instances in which a bond may not be required are so
> rare that the requirement is almost mandatory. We have held
> previously that absent circumstances where there is no risk of
> monetary loss to the defendant, the failure of a district court to require
> a successful applicant to post a bond constitutes reversible error.

<u>Frank's GMC Truck Center, Inc. v. General Motors Corp.</u>, 847 F.2d 100, 103 (3d Cir. 1988) (citing <u>System Operations, Inc. v. Scientific Games Dev. Corp.</u>, 555 F.2d 1131, 1145–46 (3d Cir. 1977)).[24]  The Third Circuit also has explained the policy justifications for Rule 65(c):

> [T]here are important policies undergirding a strict application of the bond requirement in most injunction granting contexts.  An incorrect interlocutory order may harm defendant and a bond provides a fund to use to compensate incorrectly enjoined defendants.  Such protection is important in the preliminary injunction context, for because of attenuated procedure, an interlocutory order has a higher than usual chance of being wrong.

<u>Hoxworth v. Blinder, Robinson & Co., Inc.</u>, 903 F.2d 186, 210 (3d Cir. 1990) (internal citations and quotations omitted).  In addition, "Plaintiffs too derive some protection from the bond requirement, for defendants injured by wrongfully issued preliminary injunctions can recover only against the bond itself."  <u>Id.</u> n.31.

In this case, Plaintiffs have requested a nominal bond of $1,

---

[24] In <u>Temple University v. White</u>, 941 F.2d 201, 219, 220 (3d Cir. 1991), the Third Circuit upheld the district court's refusal to require a bond under Fed. R. Civ. P. 65(c), where the party that obtained the preliminary injunction "was on the brink of financial ruin," had "sued to enforce the rights granted to it under the federal Medicaid statute, and in so doing ha[d] pursued a course of litigation clearly in the public interest."  <u>Id.</u>  The Court declared that, in determining whether to require a bond under Rule 65(c), district courts should "at least in noncommercial cases . . . consider the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant," as well as "the impact that a bond requirement would have on enforcement of [important federal rights or public interests], in order to prevent undue restriction of them."  <u>Id.</u>

"[b]ecause a preliminary injunction presents no monetary risks to [Defendants]."

Motion for Preliminary Injunction ¶ 5.  The court rejects this request.  Plaintiffs

have failed to present any evidence that Defendants will suffer no financial loss as

a result of the court's preliminary injunction; Plaintiffs also have failed to present

any evidence that a significant bond requirement would constitute an undue

hardship for them.  Therefore, despite the fact that Plaintiffs seek the enforcement

of an important federal right, the court, in the exercise of its discretion under Fed.

R. Civ. P. 65(c), will require Plaintiffs to post a bond in the amount of $5,000

before the preliminary injunction will issue.  The court believes this amount will

further the above-mentioned policies underlying Rule 65(c) without imposing an

undue hardship on Plaintiffs, and without unduly restricting the enforcement of

"important federal rights or 'public interests.'"  White, 941 F.2d at 220.


An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PENNSYLVANIA FAMILY INSTITUTE, INC., et al.,**<br>        **Plaintiffs,**<br><br>        **v.**<br><br>**JOHN R. CELLUCI, et al.,**<br>        **Defendants.** | **CIVIL ACTION NO. 07-1707** |

## <u>ORDER</u>

**AND NOW,** this 14th day of May, 2007, upon consideration of Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order (Document No. 2), Defendants' response thereto, Plaintiffs' Proposed Findings of Fact and Conclusions of Law (Document No. 13), Defendants' Proposed Findings of Fact and Conclusions of Law (Document No. 14), Defendants' Witness Narrative Statement (Document No. 15), and the arguments and evidence presented by the parties at the preliminary injunction hearing, it is hereby **ORDERED** as follows:

        1.  Plaintiffs' Motion for Preliminary Injunction is **GRANTED** for the reasons set forth in the preceding Memorandum;

        2.  All Defendants are preliminarily **ENJOINED** and **PROHIBITED**

from enforcing the "pledges and promises clause"[25] and the "commits clause"[26] of

Canon 7B(1)(c) of the Pennsylvania Code of Judicial Conduct against any

candidate for judicial office, including an incumbent judge; and

      3.  This preliminary injunction shall not issue until Plaintiffs' post a

bond in the amount of $5,000.  <u>See</u> FED. R. CIV. P. 65(c).

**BY THE COURT:**

/s/ Marvin Katz

_____

**MARVIN KATZ, S.J.**

---

[25] The "pledges and promises clause" of Canon 7B(1)(c) reads as follows:

(1) Candidates, including an incumbent judge, for a judicial office that is filled either by public election between competing candidates or on the basis of a merit system election:
. . . .
     (c) should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office . . . .

[26] The "commits clause" of Canon 7B(1)(c) reads as follows:

(1) Candidates, including an incumbent judge, for a judicial office that is filled either by public election between competing candidates or on the basis of a merit system election:
. . . .
     (c) should not . . . make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court . . . .