IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA FAMILY INSTITUTE, INC., et al.,<br>        Plaintiffs,<br><br>    v.<br><br>JOHN R. CELLUCI, et al.,<br>        Defendants. | CIVIL ACTION NO. 07-1707 |

## MEMORANDUM  AND  ORDER

Katz, S.J.                                                    October 16, 2007

         Before the court are the parties' renewed cross-motions for summary

judgment (Documents No. 40, 41, and 42) and their responses thereto (Documents

No. 43 and 44).  For the following reasons, the court will grant Defendants'

motion, deny Plaintiffs' motion, and vacate the preliminary injunction entered on

May 14, 2007.

### I.  Background

         The extensive factual background to this suit is summarized in the

court's opinions of May 14, 2007, which denied Defendants' motion to dismiss for

lack of standing and ripeness, and granted Plaintiffs' motion for a preliminary

injunction.  See Pennsylvania Family Institute, Inc. v. Celluci, 489 F. Supp. 2d 460

(E.D. Pa. 2007) (denying motion to dismiss); <u>Pennsylvania Family Institute, Inc. v.</u> <u>Celluci</u>, 489 F. Supp. 2d 447 (E.D. Pa. 2007) (granting motion for preliminary injunction).  For purposes of their cross-motions for summary judgment, the parties do not dispute the following facts:

1.  This is a civil action for declaratory and injunctive relief arising under the First and Fourteenth Amendments to the Constitution of the United States.  It concerns the constitutionality of portions of the Pennsylvania Judicial Canon 7B(1)(c).

2.  Pennsylvania state court judges are selected through a process of partisan judicial elections.  Regulation of judicial conduct, as well as the conduct of candidates for judicial office, is governed by the Pennsylvania Code of Judicial Conduct ("the Canons").

3.  Canon 7B(1)(c) prohibits judicial candidates from "mak[ing] pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office," (the "pledges and promises" clause), or from "mak[ing] statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court . . . ." (the "commits" clause).

4.  The Pennsylvania Judicial Conduct Board ("the Board"), established by Article V, § 18 of the Pennsylvania Constitution, is empowered to receive and investigate complaints regarding judicial conduct filed by individuals or initiated by the Board, to determine whether probable cause exists to file formal charges against a judicial officer, and to present its case in support of the filed charges before the Pennsylvania Court of Judicial Discipline.

5.  The current members of the Board are:  John R. Celluci, III, Charles A. Clement, Charles J. Cunningham, Patrick Judge, G. Craig Lord, Charlene R. McAbee, Jack A. Panella, Carolyn W. "Raven"

Rudnitsky, Cecilia Griffen Golden, Edward R. Klett, James R. Weaver, and Cynthia N. McCormick.

6.  Pennsylvania Rule of Professional Conduct 8.2(c) provides that a "lawyer who is a candidate for judicial office shall comply with the applicable provisions of Canon 7 of the Code of Judicial Conduct." Pennsylvania Rule of Disciplinary Enforcement 207(b) provides that Disciplinary Counsel "shall have the power and duty" to act, in effect, as prosecutors in any matter involving alleged violation of the Code of Professional Conduct.  Rule 102(a) defines "Disciplinary Counsel" as the "Chief Disciplinary Counsel and assistant disciplinary counsel."

7.  Current members of the Disciplinary Counsel in Pennsylvania are: Chief Disciplinary Counsel Paul J. Killion, Deputy Chief Disciplinary Counsel Paul J. Burgoyne, District I Office Disciplinary Counsel in Charge Anthony P. Sodroski, District II Office Disciplinary Counsel in Charge Raymond W. Wierciszewski, District III Office Disciplinary Counsel in Charge, Edwin W. Frese, Jr., and District IV Office Disciplinary Counsel in Charge Angelea Allen Mitas.

8.  Plaintiffs Jeffrey J. Reich, Howard F. Knisely, Donald R. Totaro, Margaret C. Miller, Jeffrey D. Wright, and Christopher A. Hackman (collectively "Candidate Plaintiffs") are each residents of Lancaster County, Pennsylvania, and candidates for judicial office in Lancaster County in the 2007 judicial elections.

9.  The Candidate Plaintiffs received from Lancaster County ACTION a 2007 Issues Survey ("ACTION Questionnaire") asking them to announce their views on several disputed legal and political issues.  Responses to the ACTION Questionnaire were due by April 9, 2007.

10.  By letter dated April 6, 2007 in response to the Lancaster County ACTION 2007 Issues Survey, the Candidate Plaintiffs stated that "[a]ll of us, the Endorsed Republican Judicial candidates, pledge that, if elected, we will faithfully and impartially perform the duties of that

office.  Beyond that, Canon 7B(1)(c) of the Code of Judicial Conduct prohibits us from commenting on or making statements which appear to commit us with respect to the issues addressed in these questions."  Defendants stipulate that the April 6, 2007 letter made this statement, but do not stipulate that Canon 7B(1)(c) does in fact prohibit candidates from commenting on or making statements which appear to [commit] them with respect to the issues addressed in the ACTION Questionnaire.

11.  On April 12, 2007, Plaintiff Donald R. Totaro sent a letter to the Judicial Ethics Committee of the Pennsylvania Conference of State Trial Judges, asking whether he was prohibited by Canon 7B(1)(c) from answering the ACTION Questionnaire.  In correspondence dated April 13, 2007, the Judicial Ethics Committee responded that it was not authorized to advise whether judicial candidates could respond.

12.  Plaintiff Pennsylvania Family Institute ("PFI") is a non-profit corporation incorporated in the Commonwealth of Pennsylvania.  PFI is not associated with any political candidate, political party, or campaign committee.  PFI headquarters are located in the City of Harrisburg in Dauphin County.

13.  PFI, among other things, gathers information and publishes questionnaires to educate citizens about candidates for public office.  During the 2005 judicial elections, PFI brought suit challenging the constitutionality of several provisions of the Canons on First Amendment grounds.  On November 4, 2005, PFI's challenge was dismissed on standing grounds.  *Pennsylvania Family Institute v. Black*, 2005 WL 2931825 (M.D. Pa. Nov. 4, 2005).  The Third Circuit affirmed that decision on May 25, 2007.

14.  On April 3, 2007, PFI mailed an explanatory cover letter and a "2007 Pennsylvania Family Institute Judicial Candidate Questionnaire" to all candidates for judicial office in the Pennsylvania 2007 judicial elections.  In this letter, PFI stated that all responses received would be published without alteration.

4

15.   The Candidate Plaintiffs received copies of the PFI Questionnaire.  They did not respond to the PFI Questionnaire, however, because they believed answering some of the questions on the PFI Questionnaire would violate Canon 7B(1)(c).  This is based on their own opinion and reading of the canon and not due to any advice from Defendants, or anyone else.

16.   PFI received twenty-one responses from judicial candidates. Two candidates responded by letter.  One indicated that "[i]t is because I believe that doing so would violate the Pennsylvania Code of Judicial Conduct, or its spirit, that I feel compelled to decline to answer this questionnaire."  The other stated that "as a sitting judge and a candidate . . . I feel it would be inappropriate for me to opine on many of the specifics about which you ask."  The letters did not specifically refer to Canon 7B(1)(c).

17.   Of the nineteen candidates who filled out questionnaire forms, eighteen answered question 1, which asked candidates to indicate "[w]hich of the former U.S. Presidents best represents your political philosophy?"  These candidates circled the answer option "Decline to Respond Because of Judicial Canons," which contained the explanation that:

> By circling this phrase, I hereby attest that I would have replied to this question but for the prospect that I may be disciplined for "announcing" my views under Canon 7(B)(1)(c) of the Pennsylvania Code of Judicial Conduct, which states that judicial candidates may not "make pledges or promises of conduct in office" or "make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court," and that I may be disciplined for failure to disqualify myself as a judge in any proceeding concerning the issue raise[d] in the question under Canon 3(C)(1), which states that judges must disqualify when their "impartiality might

> reasonably be questioned."  I further attest that
> responding to this question would neither cause me to be
> biased for or against parties nor affect my ability to be
> open-minded with regard to any issue.

Plaintiffs do not believe, based on these responses and the plain language of the Canons, that judicial candidates are prohibited by Canon 7B(1)(c) from answering question 1.

18.  Two candidates declined to answer question 2, which asked candidates to indicate "[w]hich one of the current Justices of the U.S. Supreme Court most reflects your judicial Philosophy?"  These candidates circled the answer option "Decline to Respond Because of Judicial Canons," which contained the explanation given in paragraph 17.  Plaintiffs do not believe, based on these responses and the "plain language" of the Canons, that judicial candidates are prohibited by Canon 7B(1)(c) from answering question 2.

19.  Three candidates declined to answer question 3, which asked candidates to "[r]ate your judicial philosophy on a scale of 1-10 with 'living document' approach as a '1' and 'strict constructionalist' or 'originalist' as a '10.'"  These candidates circled the answer option "Decline to Respond Because of Judicial Canons," which contained the explanation given in paragraph 17.  Plaintiffs do not believe, based on these responses and the "plain language" of the Canons, that judicial candidates are prohibited by Canon 7B(1)(c) from answering question 3.

20.  One candidate declined to answer question 4, which asked candidates to "list the five organizations in which you are most involved as a member, through contributions, and/or through volunteering."  This candidate circled the answer option "Decline to Respond Because of Judicial Canons," which contained the explanation given in paragraph 17.  Plaintiffs do not believe, based on these responses and the "plain language" of the Canons, that judicial candidates are prohibited by Canon 7B(1)(c) from answering question 4.

21.  Seven (7) candidates declined to answer question 5, which asked candidates to "announce" their views by indicating whether they thought *Roe v. Wade*, 410 U.S. 113 (1973) was correctly decided. These candidates circled the answer option "Decline to Respond Because of Judicial Canons," which contained the explanation given in paragraph 17.  Eleven (11) candidates did answer this question. However, PFI will not publish their responses, for fear that they will be disciplined under the canons.

22.  In addition, the Candidate Plaintiffs would have answered question 5 on the PFI Questionnaire but for the belief that they were prohibited from doing so by Canon 7B(1)(c).  This is the candidates['] own personal belief and reading of the canon and is not based on any advice from Defendants or anyone else.

23.  Six (6) candidates declined to answer question 6, which asked candidates to "announce" their views by indicating whether they believed ["]that the Pennsylvania Constitution permits display of the Ten Commandments in courtrooms?"  These candidates circled the answer option "Decline to Respond Because of Judicial Canons," which contained the explanation given in paragraph 17.  Eleven (11) candidates did answer this question.  However, PFI will not publish their responses, for fear that they will be disciplined under the canons.

24.  In addition, the Candidate Plaintiffs would have answered question 6 on the PFI Questionnaire but for the belief that they were prohibited from doing so by Canon 7B(1)(c).  This is the candidates['] own personal belief and reading of the canon and is not based on any advice from Defendants or anyone else.

25.  Six (6) candidates declined to answer question 7, which asked candidates to "announce" their views by indicating whether they believed "that the Pennsylvania Constitution recognizes a right to same-sex marriage?"  These candidates circled the answer option "Decline to Respond Because of Judicial Canons," which contained the explanation given in paragraph 17.  Eleven (11) candidates did

7

answer this question.  However, PFI will not publish their responses, for fear that they will be disciplined under the canons.

26.  In addition, the Candidate Plaintiffs would have answered question 7 on the PFI Questionnaire but for the belief that they were prohibited from doing so by Canon 7B(1)(c).  This is the candidates' own personal belief and reading of the canon and is not based on any advice from Defendants or anyone else.

27.  Six (6) candidates declined to answer question 8, which asked candidates to announce their views by indicating whether they believed "that the Pennsylvania Constitution permits student-led graduation prayers in public schools?"  These candidates circled the answer option "Decline to Respond Because of Judicial Canons," which contained the explanation given in paragraph 17.  Eleven (11) candidates did answer this question.  However, PFI will not publish their responses, for fear that they will be disciplined under the canons.

28.  In addition, the Candidate Plaintiffs would have answered question 8 on the PFI Questionnaire but for the belief that they were prohibited from doing so by Canon 7B(1)(c).  This is the candidate's [sic] own personal belief and reading of the canon and is not based on any advice from Defendants or anyone else.

29.  PFI wants to publish information on the views of judicial candidates on legal and political issues in order to educate and inform citizens.  PFI intended to publish responses to the PFI Questionnaire of judicial candidates before the May 15, 2007, primary election and intends to publish information on judicial candidates' view[s] before the November 8, 2007, general and retention election.  In addition, PFI intends to publish on its web site the responses of future judicial candidates to identical questionnaires to be sent to judicial candidates in future elections.

30.  Although PFI would like to publish and distribute the answers to all questions of the PFI Questionnaire, PFI did not do so, prior to the preliminary injunction of the canon.  Further, PFI has not published

the substantive answers it has received to questions 5, 6, 7, and 8, because it fears doing so will expose responsive judicial candidates to discipline under Canon 7B(1)(c).

31.  The Candidate Plaintiffs would like to express their views on various disputed legal and political issues, including by answering the PFI Questionnaire and the ACTION Questionnaire, but will not do so because they fear discipline under the canons.  This fear is based on the candidates' own interpretation of the canon and not on any advice from Defendants or anyone else.

32.  The Candidate Plaintiffs do not wish to pledge or promise certain results in particular cases or classes or types of cases but merely wish to announce their views on disputed legal and political issues.

33.  Answering the PFI Questionnaire and ACTION Questionnaire and announcing their views on disputed legal and political issues would not cause the Candidate Plaintiffs to be biased for or against any party and would not prevent them from remaining open-minded on any issue raised in the PFI Questionnaire or ACTION Questionnaire.

34.  PFI has no connection to any judicial candidate and does not speak for them.

35.  On May 14, 2007, Judge Katz entered an order preliminarily enjoining Canon 7B(1)(c) contingent on Plaintiffs depositing a $5000 bond with the Court.  This bond was deposited on May 16, 2007.

36.  On June 26, PFI resent the PFI Questionnaire to all candidates for judicial office in the Pennsylvania 2007 general election.  In this letter, PFI stated that all responses received would be published without alteration.

37.  PFI received sixteen responses to its general election questionnaire.  Five responses were by letter.  Of these, two (Judge John C. Mott and Judge Leslie Gorbey) cited Canon 3C(1) of the

Code of Judicial Conduct as the basis for their decision not to respond, and one (Judge Joan Orie Melvin) cited Canon 7B(1)(c) as the basis for the candidate's decision not to respond, despite that Canon's being temporarily enjoined.

38.  Eleven (11) judges and judicial candidates, including the Candidate Plaintiffs, answered the questions on the questionnaire.

39.  Of the candidates who had marked "decline to respond" to questions 5, 6, 7, and 8 on the primary questionnaire, three (Charles R. Rosamilia, Jr., Steven F. Lachman, and Joe Weinroth) were not sent general election questionnaires as they did not win their primary elections.

40.  Two of the candidates who had marked "decline to respond" to questions 5, 6, 7, and 8 of [sic] on the primary questionnaire responded to the general election questionnaire.  One (Judge Tom Kistler) answered the questions on the questionnaire he had previously declined to respond to.  The other (Judge John C. Mott) cited Canon 3C(1) as the basis for his decision not to respond to the questions.

Defendants' Motion, Attachment A (Joint Statement of Stipulated Facts).

## II.  Legal Standard

A summary judgment motion should be granted only if the court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  In a motion for summary judgment, the moving party bears the burden of proving that no genuine issue of material fact is in dispute, see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986), and the court must

"view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); see also Matsushita, 475 U.S. at 587. Once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e)) (emphasis omitted); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (holding that the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial). The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

### III. Discussion

Plaintiffs argue that they are entitled to summary judgment, because the "pledges and promises" and "commits" clauses of Canon 7B(1)(c) of the Pennsylvania Code of Judicial Conduct[1] unconstitutionally abridge their freedom

---

[1] Canon 7B(1)(c) of the Pennsylvania Code of Judicial Conduct reads as follows:

(1) Candidates, including an incumbent judge, for a judicial office that is filled either by public election between competing candidates or on the basis of a merit system election:

. . . .

of speech under the First and Fourteenth Amendments of the Constitution of the

United States of America.[2]  More precisely, Plaintiffs argue that the two clauses,

both on their face and as-applied, fail strict scrutiny and are overbroad and vague.

Defendants respond by arguing that the court lacks subject matter jurisdiction,

because Plaintiffs lack constitutional and prudential standing.  In the alternative,

Defendants contend that the court must construe the "pledges and promises" and

"commits" clauses narrowly, and that the clauses are constitutional when so

construed.

For the reasons set forth below, the court will reject Defendants'

standing arguments but will adopt their narrow construction of the "pledges and

---

(c) should not make pledges or promises of conduct in office other than
the faithful and impartial performance of the duties of the office; make
statements that commit or appear to commit the candidate with respect to
cases, controversies or issues that are likely to come before the court; or
misrepresent their identity, qualifications, present position, or other fact.

PA. CODE OF JUD. CONDUCT, Canon 7B(1)(c) (2007).  The first two clauses of Canon 7B(1)(c)
are at issue in this case.  Plaintiffs designate as the *"pledges and promises clause"* the first
clause:  "Candidates . . . for a judicial office . . . should not make pledges or promises of conduct
in office other than the faithful and impartial performance of the duties of the office"; they
designate as the *"commits clause"* the second clause:  "Candidates . . . for a judicial office . . .
should not . . . make statements that commit or appear to commit the candidate with respect to
cases, controversies or issues that are likely to come before the court."

[2] The First Amendment provides that "Congress shall make no law . . . abridging the
freedom of speech . . . ."  U.S. CONST. amend. I.  The First Amendment is applied against the
States through the Fourteenth Amendment's Due Process Clause.  See, e.g., Near v. Minnesota,
283 U.S. 697, 707 (1931).

promises" and "commits" clauses.  The court therefore will hold that the narrowly

construed clauses are constitutional, and will vacate the preliminary injunction,

which had prohibited Defendants from enforcing the clauses against any candidate

for judicial office.

### A.  Plaintiffs Have Standing.

The court previously denied Defendants' FED. R. CIV. P. 12(b)(1)

motion to dismiss on the grounds that Plaintiffs lacked standing, and that their

claims were not ripe.  See Pennsylvania Family Institute, Inc. v. Celluci, 489 F.

Supp. 2d 460 (E.D. Pa. 2007).  Defendants now renew their challenge to the

court's subject matter jurisdiction on standing grounds only.[3]  More precisely,

Defendants argue that the court lacks subject matter jurisdiction, because Plaintiffs

lack both constitutional and prudential standing.  The court will reject Defendants'

renewed challenge to its subject matter jurisdiction and hold that Plaintiffs have

both constitutional and prudential standing.[4]

---

[3] The court's opinion denying Defendants' motion to dismiss did not foreclose this renewed challenge.  See Pennsylvania Family Institute, Inc., 489 F. Supp. 2d at 470 n.21 (considering Defendants' Rule 12(b)(1) motion a facial challenge to its jurisdiction and adding that "Defendants may challenge the court's jurisdiction factually at a later date, when the record is more fully developed").

[4] Defendants argue that the recent Ninth Circuit decision in Alaska Right to Life v. Feldman, — F.3d —, 2007 WL 2743603 (9th Cir. Sept. 21, 2007) requires the court to hold that Plaintiffs lack standing.  The court disagrees, because Feldman's holding had nothing to do with standing.  The Feldman Court held that the claims of the plaintiffs before it were not ripe for review, and explicitly avoided the standing issue.  See 2007 WL 2743603, at *6 ("For the reasons

## 1. Constitutional Standing

### a. Constitutional Standing Doctrine as Clarified in the Third Circuit's <u>Black</u> Decision

The Third Circuit recently summarized the law governing standing as

follows:

> Article III of the Constitution restricts the "judicial power" of the United States to the resolution of cases and controversies. <u>See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Subsumed within this restriction is the requirement that a litigant have standing to challenge the action sought to be adjudicated in the lawsuit. <u>Id.</u>  Standing has constitutional and prudential components, both of which must be satisfied before a litigant may seek redress in the federal courts. <u>Id.</u>; <u>Wheeler v. Travelers Ins. Co.</u>, 22 F.3d 534, 537 (3d Cir. 1994).  Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed.  <u>Storino v. Borough of Point Pleasant Beach</u>, 322 F.3d 293, 296 (3d Cir. 2003).

<u>Taliaferro v. Darby Twp. Zoning Bd.</u>, 458 F.3d 181, 188 (3d Cir. 2006); <u>see also</u>

<u>Pennsylvania Family Institute, Inc. v. Black</u>, 489 F.3d 156, 164–65 (3d Cir. 2007)

---

that follow, we conclude that the district court should have declined to exercise jurisdiction on prudential ripeness grounds, given the inadequately developed record and the absence of a showing that withholding jurisdiction would impose hardship on the parties.  *As a result, we need not reach the question of Plaintiffs' standing*.") (emphasis added).  To the extent that Defendants rely on <u>Feldman</u>'s holding to challenge the court's jurisdiction on ripeness grounds, the court rejects that argument.  <u>See Pennsylvania Family Institute, Inc. v. Black</u>, 489 F.3d 156, 164–65 (3d Cir. 2007) ("[H]ad PFI established the existence of a willing speaker, the underlying challenge to the Canons and Rules themselves as having a chilling effect on speech would have been ripe."); <u>see also Pennsylvania Family Institute, Inc.</u>, 489 F. Supp. 2d at 475–80 (denying Defendants' motion to dismiss for lack of ripeness).

("We presume that federal courts lack jurisdiction unless the contrary appears

affirmatively from the record.") (quoting Presbytery of New Jersey of Orthodox

Presbyterian Church v. Florio, 40 F.3d 1454, 1462 (3d Cir. 1994)).

With regard to the constitutional component of standing, the Supreme

Court has declared:

> [T]he irreducible constitutional minimum of standing contains three
> elements.  *First*, the plaintiff must have suffered an injury in fact–an
> invasion of a legally protected interest which is (a) concrete and
> particularized, and (b) actual or imminent, not conjectural or
> hypothetical.  *Second*, there must be a causal connection between the
> injury and the conduct complained of–the injury has to be fairly
> traceable to the challenged action of the defendant, and not the result
> of the independent action of some third party not before the court.
> *Third*, it must be likely, as opposed to merely speculative, that the
> injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (emphases added;

internal citations, quotations, and footnote omitted).  "The party invoking federal

jurisdiction bears the burden of establishing these elements."  Id. at 561.

In the First Amendment context, however, the rule on constitutional

standing is that "where a [willing] speaker exists . . . the protection afforded is to

the communication, to its source and to its recipients both."  Virginia State Bd. of

Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 756 (1976).

"Therefore, where one enjoys a right to speak, others hold a 'reciprocal right to

receive' that speech, which 'may be asserted' in court." Black, 489 F.3d at 165

(quoting Virginia State Bd. of Pharmacy, 425 U.S. at 757). The Black Court

further clarified this rule as follows:

> A precondition of asserting this right to receive, however, is the
> existence of a willing speaker.
> . . . .
> [T]here may be other reasons present, but, reading the Supreme
> Court's cases together with our own, we hold that in order to show
> the existence of a willing speaker for the purposes of establishing
> third party standing, *a party must at least demonstrate that but for a*
> *regulation, a speaker subject to it would be willing to speak.*

Black, 489 F.3d at 165, 167 (emphasis added; internal quotations and citations

omitted).

### b.  Applying Constitutional Standing Doctrine to This Case

In ruling on Defendants Rule 12(b)(1) motion to dismiss, the court

previously held that Plaintiffs had established constitutional standing on three

grounds, and summarized these grounds as follows:

> First, the Candidate Plaintiffs allege that their First Amendment
> injury lies in their refusal to respond to the ACTION and PFI
> Questionnaires (i.e., their refusal to engage in protected political
> speech), because of their fear of discipline under Canon 7B(1)(c).
> Second, Plaintiff PFI alleges that its First Amendment injury lies in
> its inability to receive the protected political speech of the Candidate
> Plaintiffs and other willing speakers, who declined to answer the PFI
> Questionnaire out of fear of discipline under Canon 7B(1)(c). Third,
> Plaintiff PFI alleges that it can derive constitutional standing from its

refusal to publish the protected political speech of those candidates who fully answered the PFI Questionnaire, because the threat of discipline against the answering candidates has caused it to refrain from publishing their answers in order to protect them from discipline.

Pennsylvania Family Institute, Inc., 489 F. Supp. 2d at 472.  Contrary to Defendants' argument, Black is consistent with the court's conclusion that the Candidate Plaintiffs and Plaintiff PFI have constitutional standing on the first and second grounds, respectively.  Black, however, squarely rejected the logic underlying the court's holding that Plaintiff PFI has constitutional standing on the third ground.  See 489 F.3d at 169 ("That PFI's lawful and constitutionally protected actions might expose to liability other distinct individuals, with whom the organization has no relationship, is too speculative to constitute a cognizable injury necessary for the organization to have standing under Article III.").

### i.  The Candidate Plaintiffs and the First Ground

Black does not affect the court's analysis of the Candidate Plaintiffs' constitutional standing, because the Candidate Plaintiffs are asserting their own right to speak, as opposed to Plaintiff PFI, which is asserting a "right to receive" the Candidate Plaintiffs' speech.  (Black addressed only the latter situation.) Moreover, discovery in this action has yielded no facts that call into question the

court's previous holding that the Candidate Plaintiffs have constitutional standing

on the first ground.[5]  The court therefore stands by the reasoning that supported its

previous holding and rejects Defendants' argument that the Candidate Plaintiffs

lack constitutional standing.[6]

---

[5] The fact that the Candidate Plaintiffs have answered the PFI Questionnaire that was sent
on June 26 to all candidates for judicial office in Pennsylvania's 2007 general election, see
Plaintiffs' Motion, Exhibit A, at 2–13; Defendants' Motion, Attachment B, is significant, but
overwhelmingly so, because the complaint in this action has not been amended to base Plaintiffs'
claims on the general election PFI Questionnaire that the Candidate Plaintiffs answered (as
opposed to the slightly different primary election PFI Questionnaire, which they did not answer).
The Candidate Plaintiffs therefore must rely on evidence that relates to the primary election PFI
Questionnaire to establish their constitutional standing.  As explained below, however, their
answers to the general election PFI Questionnaire do show that they are willing to answer
questions like those posed in the PFI Questionnaire while enforcement of Canon 7B(1)(c) is
enjoined, which is relevant to Plaintiff PFI's constitutional standing argument.  Their answers
certainly do not make this action moot; Defendants' argument to that effect is rejected.  See
Defendants' Brief at 2; see also Stretton v. Disciplinary Bd. of Supreme Court of Pennsylvania,
944 F.2d 137, 140 (3d Cir. 1991).

[6] This reasoning reads as follows, with appropriate modifications that account for the
procedural posture of this case – i.e., the fact that Defendants are now challenging the court's
jurisdiction in a motion for summary judgment, as opposed to a Rule 12(b)(1) motion to dismiss:

> The Candidate Plaintiffs have met their burden of establishing constitutional
> standing.  In a letter dated April 6, 2007, the Candidate Plaintiffs signed a joint
> response to the ACTION Questionnaire that read, in pertinent part, as follows:
>
> > [In response to questions] 1, 3-5:  All of us, the Endorsed
> > Republican Judicial candidates, pledge that, if elected, we will
> > faithfully and impartially perform the duties of that office.  Beyond
> > that, Canon 7B(1)(c) of the Code of Judicial Conduct prohibits us
> > from commenting on or making statements which appear to
> > commit us with respect to the issues addressed in these questions.
>
> Compl., Exhibit 4; see also id. ¶ 19.  The Candidate Plaintiffs also allege that they
> received copies of the PFI Questionnaire but did not respond, because they
> believed that answering some of the questions – specifically questions 5, 6, 7, and
> 8 – on the PFI Questionnaire would violate Canon 7B(1)(c).  Id. ¶¶ 23, 30, 32, 34,

The court also rejects Defendants' argument that the Candidate

Plaintiffs lack constitutional standing, because "[t]he canon Plaintiffs challenge

has no application to them; so, it causes them no injury."  Defendants' Brief at 13.

Despite Defendants' assurances to the contrary, see Defendants' Motion,

Attachment F (Affidavit of Joseph A. Massa, Jr.),[7] a candidate who answered

_____

36.

> The Candidate Plaintiffs' refusal to engage in protected political speech because
> of their fear of discipline under Canon 7B(1)(c) constitutes a cognizable "injury in
> fact" that is "(a) concrete and particularized, and (b) actual or imminent."  Lujan,
> 504 U.S. at 560.  [Moreover, the court finds that the facts cited above establish] an
> adequate causal connection between the Candidate Plaintiffs' injury and Canon
> 7B(1)(c).  See Shepard, 463 F. Supp. 2d at 884 ("In a suit challenging the legality
> of government action, when the plaintiff is himself an object of the action at issue
> 'there is ordinarily little question that the action or inaction has caused him
> injury.'") (quoting Lujan, 504 U.S. at 561–62).  Finally, the court finds that it is
> likely the Candidate Plaintiffs' injury will be redressed by a favorable decision in
> this case – i.e., a declaratory judgment [or injunction] holding Canon 7B(1)(c)
> unconstitutional, either facially or as-applied to the ACTION or PFI
> Questionnaires.  See Kansas Judicial Watch v. Stout, 440 F. Supp. 2d 1209,
> 1220–21 (D. Kan. 2006) (similarly finding that the individual plaintiffs – a current
> candidate for judicial office and a prospective candidate – had constitutional
> standing).

Pennsylvania Family Institute, Inc., 489 F. Supp. 2d at 473.  The Candidate Plaintiffs' subsequent
interrogatory response – that they "have not answered the Questionnaires" and that "[w]hether
[they] would . . . answer these questions if posed during the general election depends on the
ultimate resolution of this case" – was consistent with their previous assertions, which
established their constitutional standing.  See Defendants' Motion, Attachment E (Candidate
Plaintiffs' answers to Interrogatory No. 2).  The reasoning in this footnote is still important,
however, because the Candidate Plaintiffs' claims rest on the primary election PFI Questionnaire,
which they never answered (as opposed to the general election PFI Questionnaire, which they
now have answered).

[7] Defendants' point is akin to arguing that a prosecutor – i.e., the Pennsylvania Judicial
Conduct Board ("JCB") or the Pennsylvania Office of Disciplinary Counsel ("ODC") – has the

affirmatively or negatively some of the questions posed in the ACTION and PFI

Questionnaires would be at considerable risk of violating the plain language of the

pledges and promises and commits clauses.[8]  See Defendants' Motion, Attachment

_____

authority to declare certain conduct lawful or unlawful.  The court cannot accept that argument, because the Pennsylvania Court of Judicial Discipline ("CJD"), not the JCB or ODC, ultimately determines the merit of disciplinary charges brought by the JCB or ODC against judicial candidates.  See PA. CONST., art. V, § 18(a) and (b) (defining the powers of the JCB and CJD, respectively); PA. R.D.E. 201(a)(1) and (a)(4), 203(a), 207(b) (defining the powers of the ODC); see also Defendants' Motion, Attachment A, ¶¶ 4, 6 (Joint Statement of Stipulated Facts).

   [8] At this point, it would be helpful to recall exactly what is at issue in this case.  The pledges and promises clause of Canon 7B(1)(c) prohibits judicial candidates from "mak[ing] pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office," and the commits clause of Canon 7B(1)(c) prohibits judicial candidates from "mak[ing] statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court . . . ."  The four questions in the PFI and ACTION Questionnaires that put judicial candidates in the greatest danger of violating Canon 7B(1)(c) read as follows:

>   Do you believe that *Roe v. Wade*, 410 U.S. 113 (1973), insofar as it recognizes a "right to privacy" that includes abortion under the United States Constitution, was correctly or incorrectly decided?

>   Do you believe that the Pennsylvania Constitution permits display of the Ten Commandments in courtrooms?

>   Do you believe that the Pennsylvania Constitution recognizes a right to same-sex marriage?

>   Do you believe that the Pennsylvania Constitution permits student-led graduation prayers in public schools?

Compl., Exhibit 6 (questions 5, 6, 7, and 8 of the PFI Questionnaire); Exhibit 3 (questions 1, 3, 4, and 5 of the ACTION Questionnaire).  Each Questionnaire gives the respondent the option of answering "yes," "no," "undecided," or "decline to answer."

        Defendants' argument is that Plaintiffs lack constitutional standing, because no answer they might give to these questions could come close to violating the pledges and promises and commits clauses of Canon 7B(1)(c).  With regard to the commits clause, the court finds

E (Plaintiffs' responses to Requests for Admission Nos. 1 and 3 and Interrogatory

No. 5); Compl., Exhibits 3 (ACTION Questionnaire – questions 1, 3, 4, and 5) and

6 (PFI Questionnaire – questions 5, 6, 7, and 8).  The court's rejection of this

argument is therefore consistent with <u>Lawson v. Hill</u>, 368 F.3d 955 (7th Cir.

---

Defendants' argument preposterous.  Although an affirmative or negative answer to any of the above-quoted questions might not actually commit a judicial candidate to the legal view articulated in each question, it certainly would *appear* to do so, and that is all it takes to run afoul of the commits clause.

       Defendants have a better point with regard to the pledges and promises clause, but the court still finds it unpersuasive.  It is true that an affirmative or negative answer to any of the above-quoted questions, when uttered outside the context of a judicial campaign, does not sound like a "pledge[] or promise[] of conduct in office."  But the court must consider what those answers sound like in the context of a judicial campaign, because that is what the pledges and promises clause regulates.  In that context, the court believes those answers could sound like "pledges or promises of conduct in office," especially since it is widely agreed that judicial candidates cannot pledge rulings on particular issues or cases during their campaigns (or at any other time).  In other words, the court finds it plausible that judicial candidates, cognizant of the prohibition against promising particular rulings, would make statements – like affirmative or negative answers to the above-quoted questions – in the hope that they would be viewed as implied promises by the electorate.  <u>See Buckley</u>, 997 F.2d at 228 ("[A judicial candidate] might discuss a particular case or class of cases in a way that was understood as a commitment to rule in a particular way, even though he avoided the language of pledges, promises, or commitments."); <u>In re Kinsey</u>, 842 So.2d 77, 88 (Fla. 2003) ("Each of the charges addressed above involved *implicit* pledges that if elected to office, Judge Kinsey would help law enforcement.") (emphasis added); <u>In re Watson</u>, 794 N.E.2d 1, 4 (N.Y. 2003) ("A candidate's statements must be reviewed in their totality and in the context of the campaign as a whole to determine whether the candidate has unequivocally articulated a pledge or promise of future conduct or decisionmaking that compromises the faithful and impartial performance of judicial duties."); <u>In re Shanley</u>, 774 N.E.2d 735 (N.Y. 2002) (reversing the ruling of the State Commission on Judicial Conduct that a candidate violated both the pledges and promises and commits clause merely "by holding herself out as a 'law and order candidate'").  The court therefore concludes that the fact that answers to the above-quoted questions do not sound like "pledge[] or promise[] of conduct in office" outside of a judicial election context does not mean that Plaintiffs lack constitutional standing to challenge the constitutionality of the pledges and promises clause on the ground that they fear their answers to the above-quoted questions would subject them to discipline under that clause.

2004), where the Seventh Circuit acknowledged that a plaintiff would have

standing to challenge a statute, despite a low probability of being prosecuted for

its violation, if he "ha[d] a reasonable basis for concern that he might be

prosecuted."  Id. at 959 (citing Presbytery, 40 F.3d at 1468).  See also The Pitt

News v. Fisher, 215 F.3d 354, 361 n.4 (3d Cir. 2000) ("A party may demonstrate

standing to litigate a claim even if they fail to make out a constitutional violation

on the merits.").  The court's rejection of this argument is also consistent with the

courts that have found standing in similar cases without deigning to discuss this

issue.  See Buckley v. Illinois Judicial Inquiry Board, 997 F.2d 224 (7th Cir.

1991); Duwe v. Alexander, 490 F. Supp. 2d 968, 976 (W.D. Wisc. 2007) (finding

that the plaintiffs had standing despite the fact that "[r]esponses to the Wisconsin

Right to Life survey do not constitute promises, pledges, or commitments such

that they could be constitutionally restricted or sanctioned in the interest of

judicial openmindedness"); Indiana Right to Life, Inc. v. Shepard, 463 F. Supp. 2d

879 (N.D. Ind. 2006); Stout, 440 F. Supp. 2d at 1220–21; North Dakota Family

Alliance, Inc. v. Bader, 361 F. Supp. 2d 1021 (D.N.D. 2005); Family Trust

Foundation of Kentucky, Inc. v. Wolnitzek, 345 F. Supp. 2d 672 (E.D. Ky. 2004);

compare Carey v. Wolnitzek, Civ. A. No. 3:06-36-KKC, 2006 WL 2916814, at

*13 (E.D. Ky. 2006) (finding that the plaintiff lacked constitutional standing

where there was "an infinite number of ways in which [plaintiff] could answer" the open-ended questions he planned to pose to himself and other candidates).

### ii.  Plaintiff PFI and the Second Ground

In <u>Black</u>, the Third Circuit held that PFI could not establish constitutional standing as a recipient of protected speech in a similar lawsuit challenging the constitutionality of the pledges and promises and commits clauses. But <u>Black</u> is distinguishable from this case.  In <u>Black</u>, the plaintiffs were PFI and two citizens; on appeal from the district court's dismissal of their action for lack of standing and ripeness, PFI urged the Third Circuit "to find 'willing' the fourteen judicial candidates who circled 'Decline to Answer*' as a response to one or all of the questionnaire's seven multiple choice questions."[9]  489 F.3d at 166.  The Third

---

[9] The Third Circuit described the "Decline to Answer" option in <u>Black</u> as follows:

The "Decline to Answer*" option was available for each of the document's seven multiple choice questions and, as indicated, included an asterisk that corresponded to the following footnote:

   * This response indicates that I believe that I am prohibited from
   answering this question by Canon 7(B)(1)(c) of the Pennsylvania
   Canons of Judicial Conduct, which states that judicial candidates
   may not "make pledges or promises of conduct in office" or "make
   statements that commit or appear to commit the candidate with
   respect to cases, controversies or issues that are likely to come
   before the court," and that I will have to disqualify myself as a
   judge in any proceeding concerning this matter on account of
   Canon 3(C)(1) because my "impartiality might reasonably be
   questioned" if I answered this question.

Circuit rejected this argument, because "PFI failed to prove at trial that the Canons and Rules played any actual causal role in candidates' choice to 'decline to answer.'" <u>Id.</u> at 167. More precisely, the Third Circuit "was not convinced that the footnote necessarily communicates the views of the judicial candidates," and, even assuming that it did, was "unconvinced that it effectively communicates what PFI would like us to believe it communicates, namely, that there are willing speakers who would . . . speak but for the Canons and Rules."[10] <u>Id.</u> at 168. The Third Circuit therefore held that PFI lacked constitutional standing as a recipient of speech, because it had failed to establish the existence of a willing speaker – <u>i.e.</u>, a person who would have spoken but for the challenged regulation of speech. <u>Id.</u> at 169.

  <u>Black</u> is distinguishable from this case, because Plaintiff PFI has produced the evidence of a willing speaker that the Third Circuit found lacking in <u>Black</u>. <u>Black</u> bolstered its holding that PFI lacked constitutional standing by contrasting the facts before it with those in two similar cases: <u>North Dakota Family Alliance, Inc. v. Bader</u>, 361 F. Supp. 2d 1021 (D.N.D. 2005) and <u>Family</u>

---

489 F.3d at 160.

  [10] The Third Circuit therefore found that PFI "has not persuaded us that the District Court clearly erred in rejecting PFI's assertion that the Canons and Rules are the real reason why the judges did not submit substantive responses. Without such a showing PFI cannot establish that the questionnaire respondents qualify as willing speakers." <u>Id.</u> at 169.

Trust Found. of Ky. v. Wolnitzek, 345 F. Supp. 2d 672 (E.D. Ky. 2004). "In both of those cases, organizations similar to PFI circulated questionnaires and, when several candidates declined to respond, sought standing to challenge the relevant state judicial canons by asserting a 'right to listen' claim. In each case the district court found that the organization had standing, but only after determining that the judicial candidates sent in affirmative responses that clearly demonstrated that they would not respond because of the relevant canons." Black, 489 F.3d at 167. Although the Third Circuit did not hold squarely in Black that the facts presented in Bader and Wolnitzek would establish constitutional standing for an organization like PFI, it strongly suggested that they would.

Given the factual similarities between this case and Bader and Wolnitzek, the court concludes that Plaintiff PFI has constitutional standing under Black. In a letter dated April 6, 2007, the Candidate Plaintiffs in this case signed a joint response to the ACTION Questionnaire that read, in pertinent part, as follows:

> [In response to questions] 1, 3-5: All of us, the Endorsed Republican Judicial candidates, pledge that, if elected, we will faithfully and impartially perform the duties of that office. Beyond that, Canon 7B(1)(c) of the Code of Judicial Conduct prohibits us from commenting on or making statements which appear to commit us with respect to the issues addressed in these questions.

Compl., Exhibit 4; see also id. ¶ 19.  The Candidate Plaintiffs also allege that they

received copies of the PFI primary election Questionnaire but did not respond,

because they believed that answering some of the questions – specifically

questions 5, 6, 7, and 8 – would violate Canon 7B(1)(c).  Id. ¶¶ 23, 30, 32, 34, 36.

Finally, after the court preliminarily enjoined the enforcement of Canon 7B(1)(c),

the Candidate Plaintiffs answered PFI's slightly different general election

questionnaire,[11] which shows that Canon 7B(1)(c) was indeed the reason why they

previously had refused to respond to PFI's primary election questionnaire.[12]  See

Plaintiffs' Motion, Exhibit A, at 2–13; Defendants' Motion, Attachment B; see

also Duwe, 490 F. Supp. 2d at 972 ("The question is not whether the evidence was

---

[11] The only difference between PFI's primary and general election questionnaires is the
answer option "Decline to Respond Because of Judicial Canons*" and its accompanying
footnote, which was present on the primary election questionnaire but not on the general election
questionnaire.  With regard to the most controversial questions – i.e., questions 5, 6, 7, and 8 –
the Candidate Plaintiffs all indicated that they believed that Roe v. Wade was incorrectly
decided, that the Pennsylvania Constitution permits display of the Ten Commandments in
courtrooms, that the Pennsylvania Constitution does not recognize a right to same-sex marriage,
and that the Pennsylvania Constitution permits student-led graduation prayers in public schools.
They also all added the following qualification to their responses to the four controversial
questions:  "The above responses reflect my personal opinions and should not be considered as a
commitment to a particular ruling should the issue come before me as a judge of the Lancaster
County Court of Common Pleas."

[12] The court granted Plaintiffs' motion for a preliminary injunction on May 14, 2007, and
Pennsylvania's judicial primary elections took place on May 15, 2007.  It is therefore not
surprising that, after the court preliminarily enjoined the enforcement of Canon 7B(1)(c), the
Candidate Plaintiffs did not respond to PFI's primary election questionnaire, and instead
responded to PFI's general election questionnaire.

gathered after commencement of the case but whether a willing speaker existed at that time.").

Aside from the Candidate Plaintiffs, the record reveals two other willing speakers:  M. Lucile Longo, Esq.,  and the Honorable Tom Kistler.  In a letter dated April 11, 2007, Ms. Longo declined to answer the PFI Questionnaire, because she believed "that doing so would violate the Pennsylvania Code of Judicial Conduct, or its spirit."  Compl., Exhibit 7, at 1.[13]  As for Judge Kistler, he had marked "Decline to Respond Because of Judicial Canons*" in response to questions 5, 6, 7, and 8 on PFI's primary election questionnaire.  After Canon 7B(1)(c)'s enforcement was preliminarily enjoined, however, Judge Kistler responded fully to PFI's general election questionnaire.  See Plaintiffs' Motion, Exhibit A, at 26–27; Defendants' Motion, Attachment I, at 26–27.  As with the Candidate Plaintiffs, the court finds that Judge Kistler's post-injunction response after previously refusing to respond because of Canon 7B(1)(c) establishes that he is a willing speaker under Black.  See Duwe, 490 F. Supp. 2d at 972.

The above-mentioned self-generated responses are sufficiently similar

---

[13] Ms. Longo added that "[a]dditionally, I have sought an advisory opinion from the Pennsylvania Conference of State Trial Judges, Ethics Committee and do not anticipate receiving that opinion prior to your deadline.  I have been advised the process takes approximately thirty days."  Id.  The court is not aware of any advisory opinion that Ms. Longo received from the Ethics Committee.

to the ones in <u>Bader</u> and <u>Wolnitzek</u> for the court to conclude that they "clearly demonstrate[]" that the Candidate Plaintiffs, Judge Kistler, and Ms. Longo did not respond to PFI's primary election questionnaire because of Canon 7B(1)(c).[14]  <u>See</u> <u>Black</u>, 489 F.3d at 167–68 (summarizing the affirmative responses in <u>Bader</u> and <u>Wolnitzek</u> and noting that each was "specifically drafted by the responding judicial candidate").  The court therefore holds that Plaintiff PFI has constitutional standing as a potential recipient of the chilled speech of the Candidate Plaintiffs, Judge Kistler, and Ms. Longo, because those individuals are willing speakers – <u>i.e.</u>, people who would have spoken but for the pledges and promises and commits

---

[14] The parties' Joint Statement of Stipulated Facts refers to several other responses to PFI's primary and general election questionnaires, but none of these responses makes its author a willing speaker under <u>Black</u>.  See Defendants' Motion, Exhibit A, at ¶¶ 16, 37, 38, 40.  The letter that the Honorable Anne E. Lazarus sent in lieu of a response to PFI's primary election questionnaire does not establish that she was a willing speaker, because it states only that "as sitting judge and a candidate . . . [she] fe[lt] it would be inappropriate for [her] to opine on many of the specifics about which [PFI] ask[ed]," without any specific mention of Canon 7B(1)(c) or the Pennsylvania Code of Judicial Conduct (which Ms. Longo cited in her letter explaining her refusal to respond).  Compl., Exhibit 7, at 2; Defendants' Motion, Attachment H.  The same is true with respect to the letter that the Honorable Joan Orie Melvin sent in lieu of a response to PFI's general election questionnaire.  <u>See</u> Plaintiffs' Motion, Exhibit A, at 28; Defendants' Motion, Attachment I, at 28.  Although Judge Orie Melvin mentions Canon 7B(1)(c) in her letter, her reason for not responding was not Canon 7B(1)(c) but rather her desire to avoid "chip[ping] away at the court's obligation to remain impartial and ultimately compromis[ing] the integrity of the court."  <u>Id.</u>  (This makes her letter similar to those sent by Judges Lazarus and Leadbetter, and similar to the response sent by Justice Saylor.  <u>See</u> Plaintiffs' Motion, Exhibit A, at 17–18, 29; Defendants' Motion, Attachment I, at 17–18, 29.)  Lastly, the letters sent by the Honorable John C. Mott and the Honorable Leslie Gorbey in lieu of responses to PFI's general election questionnaire show that they refused to respond not because of Canon 7B(1)(c), but rather because of their desire to avoid having to recuse themselves from future cases pursuant to Canon 3C(1) of the Pennsylvania Code of Judicial Conduct.  <u>See</u> Plaintiffs' Motion, Exhibit A, at 31–33; Defendants' Motion, Attachment I, at 31–33.

clauses of Canon 7B(1)(c) of the Pennsylvania Code of Judicial Conduct.[15]

Black is also distinguishable from this case, because the "Decline to Respond Because of Judicial Canons*" answer option in the PFI Questionnaire in this case differs from the "Decline to Answer*" option in Black,[16] and comports with Black's rule that a "willing speaker" (for purposes of establishing constitutional standing for a "right to listen" claim) must be a person who would be willing to speak *but for* the challenged regulation.[17]   See Black, 489 F.3d at

---

[15] In terms of the three-prong Lujan test, Plaintiff PFI's injury in fact is its inability to receive the willing speakers' protected speech. This injury is adequately causally related to the existence of Canon 7B(1)(c), which is deterring the willing speakers from engaging in protected speech. Finally, the court finds that it is likely that Plaintiff PFI's injury will be redressed by a favorable decision in this case – i.e., a declaratory judgment or injunction holding Canon 7B(1)(c) unconstitutional, either facially or as-applied to the ACTION or PFI Questionnaires. See Kansas Judicial Watch v. Stout, 440 F. Supp. 2d 1209, 1220–21 (D. Kan. 2006); Bader, 361 F. Supp. at 1032–33; Wolnitzek, 345 F. Supp. 2d at 684–87.

[16] By selecting this answer option, the candidates who responded to the questionnaire in Black indicated only that they believed they were prohibited from answering the questions, not that they would have answered but for the existence of the Canon. Since a candidate could have more than one reason for not answering a particular question, the Black Court held that the candidates who selected this answer option had not been proven to be willing speakers for standing purposes.  Black, 489 F.3d at 168.

[17] Recall that the star footnote that corresponded to the "Decline to Respond Because of Judicial Canons*" answer option in the PFI Questionnaire read as follows:

> *By circling this phrase, I hereby attest that I would have replied to this question **but for** the prospect that I may be disciplined for announcing my views under Canon 7(B)(1)(c) of the Pennsylvania Code of Judicial Conduct, which states that judicial candidates may not "make pledges or promises of conduct in office" or "make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court," and that I may be disciplined for failure to disqualify myself as a judge in any proceeding concerning the issue raised in the question under Canon 3(C)(1), which states that*

29

165, 167.  Although the <u>Black</u> Court expressed a general disdain toward PFI's

attempt to establish standing based on the "prepackaged and presupplied" footnote

in its previous questionnaire, the court does not believe <u>Black</u> stands for the

proposition that such footnotes may never serve to establish standing in "right to

listen" cases like this one.  In this case, the judicial candidates who received the

PFI Questionnaire were given the option of answering "Decline to Respond

Because of Judicial Canons*" *or* "Refuse to Answer for Other Reason (describe)."

So candidates who had reasons other than Canon 7B(1)(c) for not answering a

particular question could have selected "Refuse to Answer for Other Reason

(describe)" or not answered at all.  The court therefore agrees with Plaintiffs that

"[a]bsent any compelling reason to question the sincerity and integrity of

Pennsylvania judges and judicial candidates, the candidate statements on the PFI

Questionnaire are sufficient to establish the presence of a willing speaker."  <u>See</u>

Plaintiffs' Memorandum of Law at 8; <u>see also</u> <u>Duwe</u>, 490 F. Supp. 2d at 972;

<u>Bader</u>, 361 F. Supp. 2d at 1033.

 The "Decline to Respond Because of Judicial Canons*" answer

---

judges must disqualify when their "impartiality might reasonably be questioned."
I further attest that responding to this question would neither cause me to be
biased for or against parties nor affect my ability to be open-minded with regard to
any issue.

Compl. ¶ 25, Exhibit 6, at 1 (emphasis added).

option on the PFI Questionnaire was selected by one candidate in response to question 1, by two candidates in response to question 2, by three candidates in response to question 3, by one candidate in response to question 4, by seven candidates in response to question 5, and by six candidates in response to questions 6, 7, and 8.  See Pennsylvania Family Institute, Inc., 489 F. Supp. 2d at 468–69.  The court therefore holds that these candidates are also willing speakers under Black, and that Plaintiff PFI has constitutional standing as a potential recipient of their chilled speech.

## 2.  Prudential Standing

The court discussed prudential standing only briefly in its opinion denying Defendants' motion to dismiss.  The court explained the law governing prudential standing as follows:

> With regard to the prudential component of standing, the Supreme Court has observed:
>
>> Although we have not exhaustively defined the prudential dimensions of the standing doctrine, we have explained that prudential standing encompasses "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."

Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)); accord Mariana v. Fisher, 338 F.3d 189, 204–05 (3d Cir. 2003).  Put more simply, prudential standing "embodies judicially self-imposed limits on the exercise of federal jurisdiction."  Newdow, 542 U.S. at 11 (internal quotation omitted).

In the First Amendment context, however, the Supreme Court "has enunciated other concerns that justify a lessening of prudential limitations on standing."  Sec'y of State of Maryland v. Joseph H. Munson Co., Inc., 467 U.S. 947, 956 (1984).[18]  "[W]here the claim is that a statute is overly broad in violation of the First Amendment, the Court has allowed a party to assert the rights of another without regard to the ability of the other to assert his own claims and 'with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.'"  Id. at 957 (quoting Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973)).

Pennsylvania Family Institute, Inc., 489 F. Supp. 2d at 471–72; accord Amato v.

Wilentz, 952 F.2d 742, 753 (3d Cir. 1991) ("The Supreme Court rather freely

---

[18] The Supreme Court went on to summarize these concerns as follows:

Even where a First Amendment challenge could be brought by one actually engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity.  Society as a whole then would be the loser.  Thus, when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged.  Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

Id. at 956–57.

grants standing to raise overbreadth claims, on the ground that an overbroad statute or regulation may chill the expression of others not before the court.").  The court then held that the combination of Plaintiffs' constitutional standing and their First Amendment overbreadth claims gave them prudential standing under <u>Joseph H. Munson</u>.  <u>See</u> <u>id.</u> at 473 ("Since both the Candidate Plaintiffs and Plaintiff PFI have constitutional standing, their facial overbreadth challenges to the pledges and promises clause and the commits clause of Canon 7B(1)(c) give them prudential standing.") (citing <u>See</u> <u>Joseph H. Munson</u>, 467 U.S. at 956–57).

  As Defendants correctly note, the court's statement of the law governing prudential standing in First Amendment cases was incomplete.  But the cases Defendants cite – <u>Amato v. Wilentz</u>, 952 F.2d 742 (3d Cir. 1991) and <u>The Pitt News v. Fisher</u>, 215 F.3d 354 (3d Cir. 2000) – apply only when a party with constitutional standing asserts the rights of a third party – <u>i.e.</u>, a party not before the court.  Here, Plaintiff PFI is asserting the rights of the judicial candidates to whom it send the PFI Questionnaire, and six of those candidates – the Candidate Plaintiffs – are before the court seeking to vindicate those same rights.  <u>Amato</u> and <u>The Pitt News</u> therefore do not govern this case, and the court will stand by its previous holding that Plaintiffs have prudential standing to bring this action.

   **B.  The Court Must Construe the Pledges and Promises and**

**Commits Clauses Narrowly.**

And now to the merits.  Plaintiffs argue that they are entitled to summary judgment, because the pledges and promises and commits clauses of Canon 7B(1)(c) of the Pennsylvania Code of Judicial Conduct unconstitutionally abridge their freedom of speech under the First and Fourteenth Amendments of the United States Constitution.  More precisely, Plaintiffs argue that the two clauses, both on their face and as-applied, fail strict scrutiny and are overbroad and vague. Defendants counter that they are entitled to summary judgment, because the two clauses are constitutional when narrowly construed, as they must be in this case.[19] In this section, the court will explain why it agrees with Defendants that it is proper to construe the clauses narrowly as Defendants have proposed.[20]  The court then will make clear what its narrow construction of the clauses entails.

### 1.  Stretton v. Disciplinary Bd. of the Supreme Court of Pennsylvania, 944 F.2d 137 (3d Cir. 1991)

In Stretton, the Third Circuit considered the constitutionality of

---

[19] Defendants do not defend the constitutionality of the clauses in the absence of their proffered narrow construction.  The court therefore will not engage in a detailed analysis of why the clauses are unconstitutional in their current form, as numerous courts have held.  See Pennsylvania Family Institute, Inc., 489 F. Supp. 2d at 456–57 (citing cases).

[20] Defendants' proffered narrow construction of the pledges and promises and commits clauses was not before the court when it preliminarily enjoined Defendants' enforcement of the clauses.

Canon 7B(1)(c) of the Pennsylvania Code of Judicial Conduct, which at that time read as follows:

>    B.  Campaign Conduct.
>
>    (1) A candidate . . . for a judicial office . . .
>
>>        (c) should not make pledges or promises of conduct in office
>>        other than the faithful and impartial performance of the duties
>>        of the office; announce his views on disputed legal or political
>>        issues; or misrepresent his identity, qualifications, present
>>        position, or other fact.

Stretton, 944 F.2d at 141 (quoting PA. CODE OF JUD. CONDUCT, Canon 7B(1)(c)

(1974)).  The first clause of the version of Canon 7B(1)(c) challenged in Stretton

is identical to the pledges and promises clause at issue in this action.  The second

clause of that version of Canon 7B(1)(c) is identical to the "announce" clause held

unconstitutional in Republican Party of Minnesota v. White, 536 U.S. 765 (2002).

Confronted with facial and as-applied challenges to the above-quoted

version of Canon 7B(1)(c), the Third Circuit, like the Supreme Court in White,

applied strict scrutiny.[21]  See White, 536 U.S. at 774–75; Stretton, 944 F.2d at 141.

("Under the strict-scrutiny test, respondents have the burden to prove that the

---

[21] To be clear, Stretton considered the constitutionality of Canon 7B(1)(c) in its entirety, whereas White considered only the constitutionality of the announce clause.  See White, 536 U.S. at 780.  ("[T]he Minnesota Supreme Court has adopted a separate prohibition on campaign "pledges or promises," which is not challenged here.").

announce clause is (1) narrowly tailored, to serve (2) a compelling state interest."
<u>White</u>, 536 U.S. 774–75.)  The <u>Stretton</u> Court first held that the state had
established a "compelling interest in an impartial judiciary" – <u>i.e.</u>, "'in ensuring
that judges be and appear to be neither antagonistic nor beholden to any interest,
party, or person.'"  944 F.2d at 142, 144 (quoting <u>Morial v. Judiciary Comm'n</u>,
565 F.2d 295, 302 (5th Cir. 1977)).[22]  It then held that it was obliged to construe
Canon 7B(1)(c) narrowly to prohibit only a candidate's announcement of his
views on disputed legal or political issues "that [we]re likely to come before the
court."  <u>Id.</u> at 144.  Having done that, the Court found it easy to conclude that
Canon 7B(1)(c) was "narrowly tailored to serve the state's compelling interest in
an impartial judiciary," and that "the plaintiff's challenges to Canon 7B(1)(c), both
facially and as applied, must fail."  <u>Id.</u>

      <u>White</u> abrogated the result in <u>Stretton</u>, but it did not abrogate
<u>Stretton</u>'s interpretive approach.  In fact, the announce clause held
unconstitutional by the Supreme Court in <u>White</u> had been given a narrow
construction in the lower courts similar to the one that <u>Stretton</u> applied to Canon

---

[22] This formulation of the state's compelling interest resembles, albeit imperfectly, the three kinds of impartiality that the Supreme Court discussed in <u>White</u>:  (1) "lack of bias for or against either *party* to the proceeding"; (2) "lack of preconception in favor of or against a particular *legal view*"; and (3) "open-mindedness" – <u>i.e.</u>, a judge's "willing[ness] to consider views that oppose his preconceptions, and remain open to persuasion, when the issues arise in a pending case."  <u>White</u>, 536 U.S. at 775–78.

7B(1)(c).  <u>See</u> <u>White</u>, 536 U.S. at 771–72 ("In light of the constitutional concerns,

the District Court construed the clause to reach only disputed issues that are likely

to come before the candidate if he is elected judge.  The Eighth Circuit accepted

this limiting interpretation by the District Court, and in addition construed the

clause to allow general discussions of case law and judicial philosophy.") (internal

citation omitted).  Although the <u>White</u> Court found that "these limitations upon the

text of the announce clause [we]re not all that they appear[ed] to be," <u>id.</u> at 772, it

did not reject them.  Rather, it held that the announce clause, even as narrowly

construed by the Eighth Circuit, was facially unconstitutional, because it could not

withstand strict scrutiny.[23]

      Since <u>Stretton</u>'s interpretive approach is intact after <u>White</u>, the court

must determine what that approach entails, and how it should be applied to this

case.  <u>Stretton</u>'s interpretive reasoning proceeded as follows:

> The respective Boards are defendants in this litigation and evidence
> was presented on their behalf by their Counsel.  Defendants argued
> for a restrictive reading of Canon 7 in the district court as well as on
> appeal to this court.  Having adopted the position in litigation that the
> Canon is to be interpreted narrowly, the Boards are barred from
> returning to court and adopting a contrary position.  <u>See</u> <u>Delgrosso v.</u>
> <u>Spang and Co.</u>, 903 F.2d 234, 241 (3d Cir. 1990); <u>Murray v.</u>

---

[23] More precisely, <u>White</u> held that, regardless of whether safeguarding the impartiality of
the judiciary (and the appearance thereof) was a compelling state interest, the announce clause
was not narrowly tailored to serve that interest.  536 U.S. at 780.

Silberstein, 882 F.2d 61, 66 (3d Cir. 1989); O'Neida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir. 1988); Associated Hospital Service v. Pustilnik, 497 Pa. 221, 439 A.2d 1149, 1151 (1981).  The Boards are thus bound by the argument that Canon 7's use of "announce views" is limited to situations in which the candidate's speech pertains to matters that may come before the court for resolution.

To some extent, therefore, the administrative agencies charged with enforcement of the Canon have taken a position that is entitled to consideration by us.  Their interpretation, however, is entitled to less deference than would be appropriate if formal rulemaking had authoritatively expressed the agencies' stance.  See Chevron U.S.A. v. National Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

In Pennsylvania the definitive construction of the Canon is that put upon it by the state Supreme Court, but we would be naive not to recognize that the Judicial Inquiry Review Board's position is, at the very least, a straw in the wind indicating the direction that court will go.  The role of Counsel to the Judicial Inquiry Board is somewhat broader than simply advisory.  The General Counsel decides whether to begin an investigation into suspected violations and whether to recommend sanctions to the Board.  The state Supreme Court acts only upon recommendation from the Board, although it is free to disagree.  Pennsylvania Constitution Art. V, § 18(g)(h); Matter of Cunningham, 517 Pa. 417, 538 A.2d 473, appeal dismissed, 488 U.S. 805, 109 S.Ct. 36, 102 L.Ed.2d 16 (1988).

Giving a narrow construction to "announce views" in Canon 7 is consistent with other provisions of the Code.  For example, Canon 4 permits judges to write and speak about the law, the legal system and the administration of justice so long as the judge does not cast doubt on his capacity to decide any issue that may come before him.

. . . .

When a statute or regulation is challenged, it should be interpreted to avoid constitutional difficulties.  "[T]he elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality."  Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988), (quoting Hooper v. California, 155 U.S. 648, 657, 15 S.Ct. 207, 211, 39 L.Ed. 297 (1895)); Frisby v. Schultz, 487 U.S. 474, 483, 108 S.Ct. 2495, 2501, 101 L.Ed.2d 420 (1988).  In fact, courts routinely narrow statutes to avoid a potentially overbroad reach.  Osborne v. Ohio, 495 U.S. 103, 110 S.Ct. 1691, 1698, 1701-02, 109 L.Ed.2d 98 (1990).

We are aware that the state Supreme Court has in the past interpreted its rules in the light necessary to obviate constitutional objections.  See Laudenberger v. Port Authority, 496 Pa. 52, 436 A.2d 147 (1981) (prejudgment interest rule is procedural, not substantive), appeal dismissed, 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982).  Taking into account this practice, the position of the Judicial Inquiry Board, the compelling state interest and the constitutional difficulties, we are persuaded that the broad interpretation of Canon 7 urged upon us by plaintiff would be rejected by the state Supreme Court and that it would adopt the construction advanced by the Boards here.  This reading of Canon 7 does not violate the First Amendment because the limitation does not unnecessarily curtail protected speech, but does serve a compelling state interest.

944 F.2d at 143–44.

## 2.  Applying Stretton to this Case

        This case presents almost the same issues as Stretton.  Defendants

have attached to their motion for summary judgment an affidavit from Joseph A.

Massa, Jr., the Chief Counsel of the JCB, in which he offers his "analysis and

interpretation" of Canon 7B(1)(c).  See Defendants' Motion, Attachment F.  More

precisely, Mr. Massa *"interpret[s] the pledge, promise, or commit canon to mean that a candidate is prohibited from pledging, promising, or committing to decide an issue or a case in a particular way once elected judge,"* <u>id.</u> at ¶ 4, and he offers his opinion that *"[a]ny speech by a judicial candidate, short of a pledge, promise, or commitment to adjudicate a particular result, is speech permitted by the canon and by the First Amendment."* <u>Id.</u> at ¶ 5 (emphasis added). As in <u>Stretton</u>, this proffered interpretation does not conflict with the other provisions of the Code of Judicial Conduct, and Defendants freely acknowledge that advocating this interpretation of the pledges and promises and commits clauses in this case will, by virtue of the doctrine of judicial estoppel, preclude them from arguing for a different interpretation in subsequent litigation. <u>See</u> Defendant's Brief at 46; <u>see also</u> <u>In re Teleglobe Communications Corp.</u>, 493 F.3d 345, 377 (3d Cir. 2007) ("Judicial estoppel prevents a party from 'playing fast and loose with the courts' by adopting conflicting positions in different legal proceedings (or different stages of the same proceeding).") (quoting <u>Delgrosso</u>, 903 F.2d at 241). Given the Pennsylvania Supreme Court's past practice of interpreting statutes and rules to obviate constitutional objections, as well as the fact that the JCB's position "is, at the very least, a straw in the wind indicating the direction that court will go," the court will consider whether it should adopt Defendants proffered narrow

40

construction of the pledges and promises and commits clauses, though it will give

their proffered construction "less deference than would be appropriate if formal

rulemaking had authoritatively expressed [the JCB's] stance." <u>Stretton</u>, 944 F.2d

at 143–44.

Controlling Third Circuit and Supreme Court case law, including

<u>Stretton</u>, requires the court to determine whether the pledges and promises and

commits clauses are reasonably susceptible to Defendants' proffered narrow

construction, and, if so, whether it saves those clauses from unconstitutionality.

See <u>Sypniewski v. Warren Hills Regional Bd. of Educ.</u>, 307 F.3d 243, 259 (3d Cir.

2002) ("[W]e must determine whether the relatively broad language of the policy

can reasonably be viewed narrowly enough to avoid any overbreadth problem.");[24]

---

[24] The <u>Sypniewski</u> Court offered the following explanation for this rule:

> [C]ourts will not strike down a regulation as overbroad unless the overbreadth is
> substantial in relation to the regulation's plainly legitimate sweep.  Furthermore,
> in response to an overbreadth challenge, a policy can be struck down only if no
> reasonable limiting construction is available that would render the policy
> constitutional.  Every reasonable construction must be resorted to, in order to save
> a statute from unconstitutionality.  A court, however, will not rewrite a law to
> conform it constitutional requirements.

307 F.3d at 259 (internal citations and quotations omitted); <u>see also</u> <u>Virginia v. American
Booksellers Ass'n, Inc.</u>, 484 U.S. 383, 397 (1988) ("It has long been a tenet of First Amendment
law that in determining a facial challenge to a statute, if it be 'readily susceptible' to a narrowing
construction that would make it constitutional, it will be upheld.  The key to application of this
principle is that the statute must be 'readily susceptible' to the limitation; we will not rewrite a
state law to conform it to constitutional requirements.") (internal citations omitted).

see also Stretton, 944 F.2d at 144.  The answer to both questions is "yes" – the

clauses can reasonably be construed as Defendants have proposed in Mr. Massa's

affidavit,[25] and the narrowly construed clauses are constitutional.  The court will

address the reasonableness issue in this section, and the ultimate issue of

constitutionality immediately thereafter.

### a.  The Pledges and Promises Clause[26]

The pledges and promises clause can reasonably be construed as

---

[25] One might wonder why the court is narrowly construing the pledges and promises and
commits clauses when other district courts have not done so.  The answer is that the other district
courts that have considered the constitutionality of these two clauses could not narrowly construe
them, because doing so would have conflicted with existing expansive interpretations of the
clauses that had been adopted by state courts and disciplinary bodies.  See Shepard, 463 F. Supp.
2d at 882 ("Following the White decision, the Commission issued Preliminary Advisory Opinion
#1-02 . . . [which stated] that 'broad statements relating to the candidate's position on disputed
social and legal issues, . . . incurs the risk of violating the 'commitment' clause and/or the
'promises' clause.'"); Stout, 440 F. Supp. 2d at 1232–33 ("Although these advisory opinions are
not binding, the Court must consider the chilling effect of these advisory opinions on protected
speech. . . .  The clauses have been interpreted to operate as a *de facto* announce clause.")
(emphasis in original); Bader, 361 F. Supp. 2d at 1038 ("In the May 2004 letter sent to North
Dakota judicial candidates by the Judicial Ethics Advisory Committee, the Committee did not
attempt to distinguish the 'announce clause' from the 'pledges and promises clause' or the
'commitment clause' contained within the North Dakota Code of Judicial Conduct.");
Wolnitzek, 345 F. Supp. 2d at 699 ("[T]he state has not given *any* indication that it intends to
limit its promises or commit clauses in light of the Supreme Court's ruling in White.") (emphasis
in original); see also Hynes v. Mayor & Council of Borough of Oradell, 425 U.S. 610, 622
(1976) (noting that the Supreme Court was "without power" to narrowly construe the state
ordinance at issue where it already had been authoritatively construed by the state supreme
court).  Pennsylvania's pledges and promises and commits clauses have never been enforced or
construed before, so, unlike the above-cited cases, there is no comparable obstacle to the court's
narrow construction in this case.  See Defendants' Motion, Attachment F, at ¶¶ 8, 9.

[26] Recall that the pledges and promises clause provides that "[c]andidates . . . for a
judicial office . . . should not make pledges or promises of conduct in office other than the
faithful and impartial performance of the duties of the office . . . ."

Defendants have proposed, because it fulfills the clause's purpose – i.e.,

prohibiting judicial candidates from promising particular rulings once elected –

and changes the text of the clause only as much as is necessary to eliminate its

overbreadth problem.

      The purpose of the pledges and promises clause becomes clear when

one realizes that a judge's job consists primarily of deciding cases or controversies

in a particular way.  The drafters of the clause therefore must have thought that

judicial candidates could make only two kinds of pledges or promises of conduct

in office:  (1) pledges or promises to rule a particular way on an issue, case, or

controversy; and (2) pledges or promises to perform their judicial duties faithfully

and impartially.[27]  The pledges and promises clause permits the latter and forbids

the former.  Viewed this way, the clause appears perfectly consistent with the First

Amendment, which does not protect judicial candidates from discipline when they

violate the due process rights of litigants that come before them by promising

---

[27] Cf. Buckley, 997 F.2d at 228 ("The defendants' able counsel made clear at argument
that the concern which animates the rule is precisely that a candidate in a judicial election might,
in order to attract votes or to rally his supporters, *make commitments to decide particular cases
or types of case in a particular way and having made such a commitment would be under
pressure to honor it if he won the election and such a case later came before him.*  This
commitment, this pressure, would hamper the judge's ability to make an impartial decision and
would undermine the credibility of his decision to the losing litigant and to the community.")
(emphasis added).

particular rulings on issues, cases, or controversies before they are elected. <u>See</u>
Defendants' Motion, Attachment E (Candidate Plaintiffs' answers to
interrogatories number 17 and 18); <u>see also</u> <u>Stretton</u>, 944 F.2d at 142; <u>Buckley</u>,
997 F.2d at 227 ("[O]nly a fanatic would suppose that . . . the principle of freedom
of speech should be held to entitle a candidate for judicial office to promise to vote
for one side or another in a particular case or class of cases.")

   The First Amendment problem with the pledges and promises clause
is that, contrary to what its drafters must have thought, judicial candidates can
make more than two kinds of pledges or promises of conduct in office. That is,
judicial candidates can make pledges or promises of conduct in office that
guarantee neither particular results nor the faithful and impartial performance of
their judicial duties. <u>See</u> <u>id.</u> (Candidate Plaintiffs' answers to interrogatory
number 19). Moreover, the pledges and promises that fall into this third category,
and are therefore prohibited by the clause, appear to be protected political speech
under the First Amendment. <u>See</u> <u>Shepard</u>, 463 F. Supp. 2d at 889–90; <u>Bader</u>, 361
F. Supp. 2d at 1038–39; <u>Stout</u>, 440 F. Supp. 2d at 1231–33; <u>Wolnitzek</u>, 345 F.
Supp. 2d at 697–701. The <u>Wolnitzek</u> Court pointed this out by noting that "a
literal reading of the promises clause could mean it bars a simple promise to 'be
tough on crime'" or "to 'uphold the First Amendment.'" 345 F. Supp. 2d at 697.

But the court's analysis does not end here.  The overbreadth of the pledges and promises clause that <u>Wolnitzek</u> revealed should not result in the clause being struck down as unconstitutional if there is a way to reasonably construe it and thereby avoid the constitutional problem.  See <u>Sypniewski</u>, 307 F.3d at 259; <u>Stretton</u>, 944 F.2d at 144.  Defendants have proposed just such a reasonable construction.  Specifically, Defendants propose a narrow construction of the pledges and promises clause which would prohibit only "pledging, promising, or committing to decide an issue or a case in a particular way once elected judge," Defendants' Motion, Attachment F (Affidavit of Joseph A. Massa, Jr.), at ¶ 4, and which would permit a judicial candidate to promise to be tough on crime,[28] and, presumably, to uphold the First Amendment.  The court concludes that the pledges and promises clause is reasonably susceptible to this narrow construction, because it fulfills the clause's purpose – <u>i.e.</u>, prohibiting judicial candidates from promising particular rulings once elected – and changes the text of the clause only as much as is necessary to eliminate its overbreadth.

---

[28] <u>Compare id.</u> at ¶ 10 ("By way of example only, I state that statements by candidates for judicial office such as the following are *permitted* by the judicial canons, if the candidate chooses to make such statements:  "I do not favor capital punishment; . . . I think violent crime deserves jail time . . . .") (emphasis added) <u>with id.</u> at ¶ 11 ("By way of example only, I state that statements by candidates for judicial office such as the following are *prohibited* by the judicial canons, if the candidate chooses to make such statements:  "I would not uphold a sentence of capital punishment . . . I will give jail sentences for violent crimes . . . .") (emphasis added).

The court is aware of only one other decision where there pledges and promises clause was construed narrowly to avoid unconstitutionality – In re Watson, 794 N.E.2d 1 (N.Y. 2003).[29]  In Watson, the Court was confronted with an appeal of a ruling by the New York Commission on Judicial Conduct that a judicial candidate had violated the pledges and promises clause by "explicitly and repeatedly indicat[ing] that he intended to 'work with' and 'assist' police and other law enforcement personnel if elected to judicial office."  Id. at 4.  In upholding the Commission's ruling the Watson Court construed the pledges and promises clause as follows:

> By its terms, the provision does not ban all 'pledges or promises' *but only those that **compromise** the faithful and impartial performance of the duties of the office*. . . .  [M]ost statements identifying a point of view will not implicate the 'pledges or promises' prohibition.  The rule precludes only those statements of intention that single out a party or class of litigants for special treatment, be it favorable or unfavorable, or *convey that the candidate will behave in a manner **inconsistent with** the faithful and impartial performance of judicial duties if elected*.

---

[29] It is worth noting here that neither Stretton nor Buckley narrowly construed the pledges and promises clause.  Instead, both cases focused their attention on the more problematic "announce" clause.  See Stretton, 944 F.2d at 144 ("[W]e predict that the Supreme Court of Pennsylvania would read Canon 7B(1)(c) to mean that 'disputed legal or political issues' refers to only those issues that are likely to come before the court."); Buckley, 997 F.2d at 229 ("The district judge's contribution to narrowing the rule was to interpret the 'announce' clause as confined to issues likely to come before the judge in his judicial capacity. . . .  But the district judge's interpretation . . . does not touch the 'pledges or promises' clause, which is as overbroad as the 'announce' clause.").

Id. at 7 (emphasis added).  As the above-quoted passage makes clear, the New

York Court of Appeals read the pledges and promises clause non-literally.  That is,

the Watson Court did not read the clause to prohibit all pledges and promises

"*other than* the faithful and impartial performance of the duties of the office."

Instead, the Watson Court read the clause as prohibiting only pledges and

promises that "compromised" or were "inconsistent with" faithful and impartial

performance.

     The court admits that Watson's narrow construction of the pledges

and promises clause is attractive for its simplicity, but the court does not believe it

solves the overbreadth problem exemplified by the apparently prohibited

pledges/promises "to be tough on crime" and "to uphold the First Amendment."

According to Watson,

> [C]andidates need not preface campaign statements with the phrase "I
> promise" before their remarks may reasonably be interpreted by the
> public as a pledge to act or rule in a particular way if elected.  A
> candidate's statements must be reviewed in their totality and in the
> context of the campaign as a whole to determine whether the
> candidate has unequivocally articulated a pledge or promise of future
> conduct or decisionmaking that compromises the faithful and
> impartial performance of judicial duties.

794 N.E.2d at 4.  Under this standard, a judicial candidate's promise "to be tough

on crime" could be viewed as a pledge/promise "to 'work with' and 'assist' police

47

and other law enforcement personnel," which is exactly what <u>Watson</u> held to be a

violation of New York's pledges and promises clause.  Likewise, a judicial

candidate's promise "to uphold the First Amendment" could, in the right context,

be viewed as a prohibited pledge/promise to rule in favor of those who often find

their speech subject to government regulation, such as flagburners and anti-

abortion protesters.  <u>See</u> <u>Buckley</u>, 997 F.2d at 228 ("The candidate might make an

explicit commitment to do something that was not, in so many words, taking sides

in a particular case or class of cases but would be so understood by the electorate;

he might for example promise always to give paramount weight to public safety or

to a woman's right of privacy.").  Unlike <u>Watson</u>'s narrow construction,

Defendants' proffered narrow construction of the pledges and promises clause

avoids these overbreadth problems while also fulfilling the clause's purpose of

prohibiting judicial candidates from promising particular rulings once elected.

The court therefore rejects <u>Watson</u>'s narrow construction and concludes that the

pledges and promises clause can reasonably be construed as Defendants have

proposed.[30]

---

[30] Although <u>Duwe</u> upheld a rule of judicial conduct that prohibited "pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of the office," 490 F. Supp. 2d at 975, it was not confronted with the issue of whether it would be reasonable to construe the pledges and promises clause that way.  <u>Duwe</u> is therefore not inconsistent with the court's rejection of <u>Watson</u>'s narrow construction and adoption of Defendants' proffered narrow construction.  Interestingly, though, the <u>Duwe</u> Court saw the rule it

### b.  The Commits Clause[31]

The commits clause can reasonably be construed as Defendants have

proposed, because it fulfills the clause's purpose – i.e., prohibiting, within the

bounds of the First Amendment, judicial candidates from committing themselves

to particular rulings once elected – and changes the text of the clause only as much

as is necessary to eliminate its vagueness problem.

The history of the commits clause shows that the American Bar

Association ("ABA") drafted and later modified it with the goal of prohibiting

judicial candidates from making statements that commit them to particular results,

while still respecting candidates' rights under the First Amendment.  "In 1990, in

response to concerns that its 1972 Model Canon – which was the basis for

Minnesota's announce clause – violated the First Amendment, see L. MILORD,

THE DEVELOPMENT OF THE ABA JUDICIAL CODE 50 (1992), the ABA replaced that

canon with [the commits clause].  ABA MODEL CODE OF JUDICIAL CONDUCT,

Canon 5(A)(3)(d)(ii) (2000)."  White, 536 U.S. at 773 n.5; accord Buckley, 997

_____

upheld as "present[ing] the precise question left open by White, whether a state may
constitutionally prohibit a candidate from promising to decide an issue in a particular way if
elected."  490 F. Supp. 2d at 975.  This suggests that there may not be much of a difference
between Duwe and this decision, in terms of their end results.

[31] Recall that the commits clause provides that "[c]andidates . . . for a judicial office . . .
should not . . . make statements that commit or appear to commit the candidate with respect to
cases, controversies or issues that are likely to come before the court . . . ."

F.2d at 230.  In 2003, reacting to <u>White</u> and concerns about the commits clause's vagueness, the ABA amended the clause by deleting the phrase "or appear to commit."  <u>See</u> <u>Bader</u>, 361 F. Supp. 2d at 1041 n.2; <u>see also</u> ANNOTATED MODEL CODE OF JUDICIAL CONDUCT 357 (Art Garwin & Kathleen Maher, eds. 2004). Defendants' proffered narrow construction of the commits clause is therefore consistent with the clause's purpose – <u>i.e.</u>, prohibiting judicial candidates from committing themselves to particular rulings once elected, while also respecting the candidates' First Amendment rights.

The commits clause's purpose, and the reasonableness of Defendants' proffered narrow construction, become clearer upon closer examination of the clause's text.  The clause provides that "[c]andidates . . . for a judicial office . . . should not . . . make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court . . . ."

The Supreme Court has made it clear, however, that "limiting the scope of the clause to issues likely to come before a court is not much of a limitation at all," because "[t]here is almost no legal or political issue that is unlikely to come before a judge of an American court, state or federal, of general jurisdiction."  <u>White</u>, 536 U.S. at 772 (quoting <u>Buckley</u>, 997 F.2d at 229).  With

50

this in mind, the relevant text of the commits clause should read as follows:

"[c]andidates . . . for a judicial office . . . should not . . . make statements that

commit or appear to commit the candidate with respect to cases, controversies or

issues."

It is also clear that the phrase "or appear to commit" makes the

commits clause unconstitutionally vague.  See Bader, 361 F. Supp. 2d at 1041 n.2;

see also Duwe, 490 F. Supp. 2d 977; Shepard, 463 F. Supp. 2d at 889.  To save

the clause from unconstitutionality, Defendants propose deleting this phrase.  The

commits clause is reasonably susceptible to this deletion, because it leaves the

clause's core prohibition intact, changing only the standard by which violations

will be determined.  The phrase "or appear to commit" makes the clause

unconstitutionally vague by allowing the unpredictable opinions of third parties to

determine whether a candidate has violated the clause; deleting that phrase saves

the clause from unconstitutionality by subjecting the clause to an objective

"commitment" standard.  By narrowly construing the commits clause in this way,

the court is simply following controlling case law.  See Stretton, 944 F.2d at 144

("The elementary rule is that every reasonable construction must be resorted to, in

order to save a statute from unconstitutionality.") (internal quotation omitted).

Minus the unconstitutionally vague phrase "or appear to commit,"

the remaining text of the commits clause – "[c]andidates . . . for a judicial office . .

. should not . . . make statements that commit the candidate with respect to cases,

controversies or issues" – is remarkably similar to Defendants' proffered narrow

construction of the commits clause – i.e., that the clause only prohibits a judicial

candidate from "pledging, promising, or committing to decide an issue or a case in

a particular way once elected judge."  Defendants' Motion, Attachment F, at ¶ 4.

This similarity shows that the clause is reasonably susceptible to Defendants'

proffered narrow construction, which fulfills the clause's purpose of prohibiting,

within the bounds of the First Amendment, judicial candidates from committing

themselves to particular rulings once elected, and which alters the clause's text

only as much as is necessary to eliminate its vagueness problem.[32]

### c.  Summary

In sum, the pledges and promises and commits clauses can reasonably

be construed as Defendants have proposed,[33] because that construction fulfills the

---

[32] To the extent the commits clause is unconstitutionally overbroad, Defendants'
proffered narrow construction eliminates that overbreadth.  See the court's discussion of the
pledges and promises clause's overbreadth in Section III.B.2.a., supra.

[33] The reasonableness of the court's narrow construction of the pledges and promises and
commits clauses is further bolstered by Plaintiffs' acknowledgment that, "[t]aken in their
ordinary senses, the three terms ["pledge," "promise," and "commitment"] would appear to have
the same meaning."  Memorandum in Support of Plaintiffs' Motion at 15 ("Webster's defines
'pledge' as 'a formal promise to do or not do something,' 'promise' as 'an assurance that one
will or will not do something,' and 'commitment' as 'pledge to do something.'  WEBSTER'S II
NEW RIVERSIDE UNIVERSITY DICTIONARY (1984).").  Although the court does not believe that

clauses' purposes, while changing their text only as much as is necessary to keep

them from being held unconstitutional.[34]  The court therefore will adopt

Defendants' proffered narrow construction.

### 3. The Meaning of the Court's Narrow Construction of the Pledges and Promises and Commits Clauses.

Since the court has decided to adopt Defendants' proffered narrow

construction of the pledges and promises and commits clauses, it is necessary to

clarify what that narrow construction entails.  The best way to do this is to

---

the pledges and promises and commits clauses are redundant or identical, it does believe that narrowly construing them to avoid unconstitutionally restricting judicial candidates' First Amendment freedom of speech logically results in limiting their prohibition to the same speech – i.e., "pledge[s], promise[s], or commitment[s] to adjudicate a particular result."  Affidavit of Joseph A. Massa, Jr., at ¶ 5.

The ABA's 2003 revision of its Model Code of Judicial Conduct also supports applying the same narrow construction to both the pledges and promises and commits clauses. That revision combined aspects of the pledges and promises and commits clauses to create a new prohibition – Canon 5A(3)(d)(i) – which replaced those clauses, and which reads as follows:  "A candidate for a judicial office . . . shall not with respect to cases, controversies, or issues that are likely to come before the court, make pledges, promises or commitments that are inconsistent with the impartial performance of the adjudicative duties of the office." ANNOTATED MODEL CODE OF JUDICIAL CONDUCT 348 (Art Garwin & Kathleen Maher, eds. 2004).  Unfortunately, like the narrow construction of the pledges and promises clause in Watson, Canon 5A(3)(d)(i) is overbroad and therefore not a viable alternative to the court's narrow construction, because it prohibits pledges, promises, and commitments by judicial candidates that are merely "inconsistent with" impartial performance of judicial duties.  See Section III.B.2.a., supra.

[34] In this sense, the court's narrow construction of the pledges and promises and commits clauses is at least as reasonable as Stretton's narrow construction of the announce clause, which construed the phrase "disputed legal or political issues" to encompass "only those issues that are likely to come before the court."  944 F.2d at 144.  (The announce clause provided that "[a] candidate . . . for a judicial office . . . should not . . . announce his views on disputed legal or political issues."  Id. at 141.)

reproduce the affidavit of Mr. Massa, which explains Defendants' proffered

narrow construction in detail. ***The court hereby adopts in full the contents of Mr.***

***Massa's affidavit as part of its narrow construction of the pledges and promises***

***and commits clauses in this case.*** Mr. Massa's affidavit reads as follows:

> I, JOSEPH A. MASSA, JR., do hereby swear to the truth of the
> following:
>
> 1.  I am Chief Counsel for the Judicial Conduct Board of
> Pennsylvania.  Part of my responsibility is to supervise and approve
> investigation of judicial conduct complaints.
>
> 2.  I am familiar with the United States Supreme Court's decision in
> Republican Party of Minnesota v. White, 536 US 765 (2002) and
> factor it into my analysis and interpretation of the Judicial Canon
> concerning candidate speech, specifically Pennsylvania Code of
> Judicial Conduct, Canon 7B(1)(c).
>
> 3.  None of the Questionnaires referenced in the above captioned
> federal court Complaint, and sent to judicial candidates, ask
> candidates to pledge, promise, or commit as I interpret the Canon
> which prohibits pledges, promises or commitments, specifically
> Pennsylvania Code of Judicial Conduct, Canon 7B(1)(c).
>
> 4.  I interpret the pledge, promise, or commit canon to mean that a
> candidate is prohibited from pledging, promising, or committing to
> decide an issue or a case in a particular way once elected judge.
>
> 5.  Any speech by a judicial candidate, short of a pledge, promise, or
> commitment to adjudicate a particular result, is speech permitted by
> the canon and by the First Amendment.
>
> 6.  None of the Plaintiff candidates' answers to [the] PFI
> Questionnaire are pledges, promises, or commitments in any sense,

and none violate Canon 7B(1)(c).

7.  I am aware of at least eleven (11) judicial candidates who have fully and completely answered the Questionnaire referenced in the above-captioned Complaint.  None have had a judicial conduct complaint filed against them, nor has any judicial inquiry or investigation been done nor is any planned.  In my opinion, these candidates' responses do not violate the judicial canons.

8.  To my knowledge, no complaint has ever been filed against any judicial candidate for announcing views on any issue; and no inquiry or investigation has been conducted concerning such.

9.  To my knowledge, no complaint has ever been filed against any judicial candidate for pledging, promising or committing as to any issue; and no inquiry or investigation has been conducted concerning such.

10.  By way of example only, I state that candidate statements such as the following are permitted by the judicial canons, if the candidate chooses to make such statements:  "I do not favor capital punishment; I do not favor abortions; I do not favor same sex marriages; I think violent crime deserves jail time; I favor prayer in public schools."

11.  By way of example only, I state that candidate statements such as the following are prohibited by the judicial canons, if the candidate chooses to make such statements:  "I would not uphold a sentence of capital punishment; I would not approve a minor's request for an abortion; I would not authorize a same sex marriage; I will give jail sentences for violent crimes; I will approve any public school's request for authorization of prayer."

12.  Although my opinion of the judicial canons cannot legally bind either the Judicial Conduct Board or the Pennsylvania Supreme Court, it has been my experience that neither the Judicial Conduct Board nor the Supreme Court have disregarded my opinion or construction of the canons in the past nor that they construe Canon

7B(1)(c) in a way other than I do.

>/s/ Joseph A. Massa, Jr.
>Chief Counsel
>Judicial Conduct Board

Defendant's Motion, Attachment F (Affidavit of Joseph A. Massa, Jr.) (Emphases

omitted).

### C. The Narrowly Construed Pledges and Promises and Commits Clauses Are Constitutional, Both on Their Face and As-Applied.

#### 1. On Their Face, the Narrowly Construed Clauses Satisfy Strict Scrutiny.

Because the pledges and promises and commits clauses restrict the

political speech of judicial candidates, the court will follow Stretton and White in

subjecting the clauses to strict scrutiny. See White, 536 U.S. at 774–75; Stretton,

944 F.2d at 141. "Under the strict-scrutiny test, [Defendants] have the burden to

prove that the announce clause is (1) narrowly tailored, to serve (2) a compelling

state interest." White, 536 U.S. 774–75.

In their motion for summary judgment, Defendants state that

"Pennsylvania has a compelling interest in protecting [the] due process rights of

future litigants by preventing judicial candidates from pledging, promising, or

committing to [the] adjudication of particular results." Defendants' Motion at ¶

10.  In their brief, Defendants add that Pennsylvania has a compelling interest in

preserving an openminded judiciary – i.e., "a judiciary that is impartial in the sense

that it gives litigants a fair chance to persuade the court of the validity of their

arguments."[35]  Defendants' Brief at 69.[36]  Like other courts that have considered

these state interests, the court holds that both interests are compelling.  See Duwe

v. Alexander, 490 F. Supp. 2d 968, 975 (W.D. Wis. 2007) ("The Seventh Circuit

has similarly indicated its belief that states may legitimately forbid judicial

promises to rule a particular way.") (citing Buckley v. Illinois Judicial Inquiry Bd.,

997 F.2d 224, 230 (7th Cir. 1993)); Shepard, 463 F. Supp. 2d at 888; Stout, 440 F.

---

[35] Interestingly, Defendants did not assert that Pennsylvania has a compelling interest in preserving the *appearance* of an openminded judiciary.

[36] This formulation of Pennsylvania's interest closely resembles the interest that Minnesota asserted in White (i.e., the impartiality of the state judiciary and the appearance thereof) when impartiality is thought of as "openmindedness" – i.e., the "quality in a judge [that] demands, not that he have no preconceptions on legal issues, but that he be willing to consider views that oppose his preconceptions, and remain open to persuasion, when the issues arise in a pending case." White, 536 U.S. at 778 ("This sort of impartiality seeks to guarantee each litigant, not an *equal* chance to win the legal points in the case, but at least *some* chance of doing so.") (emphasis in original).  The court therefore will consider this formulation of Pennsylvania's interest to be equivalent to the interest in preserving an openminded judiciary, as discussed in White.  (It should be noted that this meaning of "impartiality" differs greatly from the other two meanings that the Supreme Court discussed in White – i.e., (1) "lack of bias for or against either *party* to the proceeding"; and (2) "lack of preconception in favor of or against a particular *legal view*." 536 U.S. at 775–78 (emphases in original).  With regard to the former, the court concludes that the pledges and promises and commits clauses are "barely tailored" to serve the state's compelling interest in that kind of impartiality, "inasmuch as [they] do[] not restrict speech for or against particular *parties*."  Id. at 776 (emphasis in original).  With regard to the latter meaning of impartiality, the Supreme Court has held that "[i]mpartiality in this sense . . . is not a *compelling* state interest."  Id. at 777 (emphasis in original).)

57

Supp. 2d at 1229–30 ("[T]his court follows the courts that have construed <u>White</u>, and evaluate[s] open-mindedness as a compelling state interest."); <u>Wolnitzek</u>, 345 F. Supp. 2d at 695 ("To the extent that the promises and commit clauses attempt to prevent judicial candidates from promising to rule a certain way on cases, controversies or issues likely to come before the court, the state has a compelling interest in such a restriction."); <u>see also</u> <u>Stretton</u>, 944 F.2d at 142, 144.

The court also holds that the narrowly construed pledges and promises and commits clauses are narrowly tailored to serve Pennsylvania's compelling interests in preserving an openminded judiciary and in protecting the due process rights of future litigants (by preventing judicial candidates from pledging, promising, or committing to the adjudication of particular results).  <u>See</u> <u>Stout</u>, 440 F. Supp. 2d at 1229–30; <u>see also</u> <u>Duwe</u>, 490 F. Supp. 2d at 975–76 (finding strict scrutiny satisfied by a rule of conduct that prohibits a judge, judge-elect, or candidate from making "promises or commitments that are inconsistent with the impartial performance of the adjudicative duties of the office" "with respect to cases, controversies, or issues that are likely to come before the court"). <u>But see</u> <u>Shepard</u>, 463 F. Supp. 2d at 888–89; <u>Bader</u>, 361 F. Supp. 2d at 1039–40.

Under the court's narrow construction of the clauses, "[a]ny speech by a judicial candidate, short of a pledge, promise, or commitment to adjudicate a

particular result, is speech permitted by the canon and by the First Amendment,"
Section III.B.3, supra, at ¶ 5, so it is hard to imagine a restriction more narrowly
tailored to Pennsylvania's compelling interest in protecting the due process rights
of future litigants.

As for Pennsylvania's compelling interest in preserving an
openminded judiciary, the court finds that its narrow construction of the clauses
dispels the two concerns that led the Supreme Court in White to conclude that the
announce clause was not sufficiently narrowly tailored to serve that interest.  The
first such concern was the fact that, despite the announce clause's prohibition
against a judge "announc[ing] his or her views on disputed legal or political
issues," certain provisions of the Minnesota Code of Judicial Conduct both
permitted and encouraged judges to "state their views on disputed legal issues
outside the context of adjudication – in classes that they conduct, and in books and
speeches."  White, 536 U.S. at 779 (citing MINN. CODE OF JUDICIAL CONDUCT,
Canon 4(B) (2002)).  The White Court concluded that this inconsistency was
"quite incompatible with the notion that the need for open-mindedness (or the
appearance of open-mindedness) lies behind the prohibition at issue here."  Id.
The second concern that led the White Court to find the announce clause
insufficiently narrowly tailored was the "woeful[] underinclusive[ness]" of the

clause.  Id. at 780.  The Court explained this underinclusiveness with the following example:

> The short of the matter is this:  In Minnesota, a candidate for judicial office may not say "I think it is constitutional for the legislature to prohibit same-sex marriages."  He may say the very same thing, however, up until the very day before he declares himself a candidate, and may say it repeatedly (until litigation is pending) after he is elected.  As a means of pursuing the objective of open-mindedness that respondents now articulate, the announce clause is so woefully underinclusive as to render belief in that purpose a challenge to the credulous.

Id. at 779–80.

Neither of the concerns mentioned above applies to the narrowly construed pledges and promises and commits clauses.  "Unlike announcements, there is no canon that encourages judicial candidates to promise or pledge or commit to rule a particular way in a case or controversy or issue likely to come before the court."  Stout, 440 F. Supp. 2d at 1230 (citing Wolnitzek, 345 F. Supp. 2d at 696).  "Also, the underinclusiveness argument is not as persuasive when applied to these clauses because 'the only time a promise to rule a certain way has any meaning is in the context of a judicial campaign'" Id. (quoting Wolnitzek, 345 F. Supp. 2d at 696); cf. Duwe, 490 F. Supp. 2d at 976 ("Impliedly, a commitment to decide a case or issue in a particular way is offered in exchange for votes, a process which makes no sense for a non-candidate.").

The court agrees with the courts that have said that "[a] campaign promise to rule a certain way on a legal issue likely to come before the court is so uniquely destructive of open-mindedness and confidence in the judiciary that recusal might not satisfactorily protect the state's interest in maintaining judicial open-mindedness." Id. at 1231 (quoting Wolnitzek, 345 F. Supp. 2d at 702 n.12).[37]  This reality, combined with the Supreme Court's observation that "limiting the scope of the [announce] clause to issues likely to come before a court is not much of a limitation at all," White, 536 U.S. at 772, justifies the court's holding that the narrowly construed pledges and promises and commits clauses are narrowly tailored to serve Pennsylvania's compelling interest in preserving an openminded judiciary, for the narrowly construed clauses prohibit only "pledge[s], promise[s], or commitment[s] to adjudicate a particular result."[38]  Section III.B.3,

_____

[37] See also White, 536 U.S. at 780 ("Justice STEVENS asserts that statements made in an election campaign pose a special threat to open-mindedness because the candidate, when elected judge, will have a *particular* reluctance to contradict them.  That might be plausible, perhaps, with regard to campaign *promises*.") (internal citation omitted; emphases in original).

[38] With regard to the narrow tailoring requirement, Plaintiffs offer two further arguments that merit little discussion.  Plaintiffs claim that the clauses are overinclusive because "they prevent judges and judicial candidates from announcing their views on disputed legal and political issues."  Plaintiffs' Memorandum of Law, at 22.  This is clearly not the case, given that the court has adopted Defendants' proffered narrow construction of the clauses.  Plaintiffs also claim there are two less restrictive means by which Pennsylvania can achieve its compelling interest in preserving an openminded judiciary:  (1) by allowing voters to "reject a judicial candidate who makes excessive or inappropriate campaign pledges," (2) and by allowing judges to police their own biases, as they regularly do.  Id. at 23–25.  These suggested means are certainly less restrictive than the narrowly construed clauses, but they would do little to help

supra, at ¶ 5.

In Duwe, the District Court held that a similar judicial canon satisfied strict scrutiny; the court agrees with and adopts Duwe's reasoning on this point, which proceeded as follows:

> There is a very real distinction between a judge committing to an outcome before the case begins, which renders the proceeding an exercise in futility for all involved, and a judge disclosing an opinion and predisposition before the case.  A disclosure of a predisposition on an issue is nothing more than acknowledgment of the inescapable truth that thoughtful judicial minds are likely to have considered many issues and formed opinions on them prior to addressing the issue in the context of a case.  [White, 536 U.S.] at 779, 122 S.Ct. 2528.
>
> The Rule on its face is narrowly tailored to serve this openmindedness interest.  The language of the rule avoids the successful vagueness, overbreadth, under inclusiveness and over inclusiveness challenges against other versions of rules purporting to ban pledges and promises by judicial candidates.
>
> Whether a statement is a pledge, promise or commitment is objectively discernable.  It requires affirmative assurance of a particular action.  It is a predetermination of the resolution of a case or issue.  It is not a statement of belief or opinion.  Absent a statement committing the speaker to decide a case, controversy or issue in a particular way, the speaker can be confident that the rule is not violated.  The rule differs in a critical way from the predecessor ABA rule invalidated in Shepard:  it eliminates the phrase "appears to commit."  The vagueness of that phrase converts the provision into an

---

Pennsylvania achieve its compelling interest in preserving an openminded judiciary.  The court therefore concludes that these less restrictive means do not affect its conclusion that the narrowly construed pledges and promises and commits clauses satisfy strict scrutiny.

> alternate version of the announce clause condemned by <u>White</u>,
> because while a forceful opinion on an issue may "appear to commit"
> someone to an outcome, it is not a true commitment. The difference
> is not merely semantic. People are practiced in recognizing the
> difference between an opinion and a commitment (which explains
> why politicians typically stop short of the latter). A promise, pledge
> or commitment typically includes one of those three words or phrases
> like "I will" or "I will not." Phrases like "I believe" or "It is my
> opinion" signal the absence of commitment.
>
> The distinction between a commitment and an announced position on
> an issue is relevant to the health of the judiciary. One presumes that a
> person is likely to decide in accordance with an opinion or belief, but
> will only rely upon an actual commitment. As a result, reaction to
> breaking a commitment or promise is far stronger than to a decision
> that contradicts an opinion or belief. A genuine commitment creates
> a different expectation and poses a far greater threat to the
> impartiality and appearance of impartiality of the judiciary.

<u>Duwe</u>, 490 F. Supp. 2d at 975–76 (internal citation omitted)

In sum, Pennsylvania has compelling interests in preserving an openminded judiciary and in protecting the due process rights of future litigants (by preventing judicial candidates from pledging, promising, or committing to the adjudication of particular results), and the narrowly construed pledges and promises and commits clauses are narrowly tailored to serve those interests. The narrowly construed clauses therefore satisfy strict scrutiny.[39]  Cf. <u>Duwe</u>, 490 F.

---

[39] Although <u>Buckley</u> struck down Illinois's versions of the pledges and promises and announce clauses in 1993, that decision is distinguishable, because the <u>Buckley</u> Court had before it a different narrow construction of those clauses. <u>See</u> 997 F.2d at 226, 228 ("The district judge upheld Rule 67(B)(1)(c) and dismissed the two suits after construing the 'announce' clause (the

Supp. 2d at 975–76.

## 2.  The Narrowly Construed Clauses Are Not Facially Overbroad or Vague.

The narrowly construed pledges and promises and commits clauses are neither overbroad nor vague.  See Stretton, 944 F.2d at 144; cf. Duwe, 490 F. Supp. 2d at 975–76.  The narrowly construed clauses are not overbroad, because they regulate no speech beyond their "plainly legitimate sweep."  Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973); see also Sypniewski, 307 F.3d at 259 ("[C]ourts will not strike down a regulation as overbroad unless the overbreadth is substantial in relation to the regulation's plainly legitimate sweep.") (internal quotation omitted).  The narrowly construed clauses are not vague, because the court's narrow construction, explained fully in Section III.B.3, supra, is clear enough that "men of common intelligence" need not "guess at its meaning." Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926); see also Gibson v. Mayor

---

candidate is not to 'announce his views on disputed legal or political issues') as being limited to statements on issues likely to come before the judge in a case. . . .  The rule challenged here deals with both forms of implied commitment in the most comprehensive fashion imaginable.  The 'pledges or promises' clause is not limited to pledges or promises to rule a particular way in particular cases or classes of case; all pledges and promises are forbidden except a promise that the candidate will if elected faithfully and impartially discharge the duties of his judicial office. The 'announce' clause is not limited to declarations as to how the candidate intends to rule in particular cases or classes of case; he may not 'announce his views on disputed legal or political issues,' period.  The rule certainly deals effectively with the abuse that the draftsmen were concerned with; but in so doing it gags the judicial candidate.").

& Council of City of Wilmington, 355 F.3d 215, 225 (3d Cir. 2004) ("A statute or regulation must fail for vagueness if it forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning.") (internal quotation omitted).

### 3. The Narrowly Construed Clauses Are Constitutional As-Applied to the ACTION and PFI Questionnaires.

The narrowly construed pledges and promises and commits clauses are constitutional as-applied to the ACTION and PFI Questionnaires, because the court's narrow construction makes it clear that those Questionnaires do not ask candidates to "pledge, promise, or commit" within the meaning of Canon 7B(1)(c), and that the responses of candidates who answered the questionnaires "do not violate the judicial canons."  Section III.B.3, supra at ¶¶ 3, 6; cf. Duwe, 490 F. Supp. 2d at 976–77 (applying a judicial canon similar to the narrowly construed clauses and concluding that the canon cannot constitutionally be enforced against a candidate who responds to a survey like the PFI or ACTION Questionnaires). Judicial candidates in Pennsylvania therefore may answer questionnaires such as the PFI and ACTION Questionnaires without fear of discipline under Canon 7B(1)(c), and they may rely on the court's narrow construction of the pledges and promises and commits clauses to guide their conduct in future cases.  See Section

65

III.B.3, supra.  Moreover, Defendants hereafter may not advocate a broader

construction of the clauses.  See Stretton, 944 F.2d at 143.

## IV.  Conclusion

For the foregoing reasons, the court rejects Defendants' arguments

that Plaintiffs lack constitutional and prudential standing, but agrees with

Defendants that the pledges and promises and commits clauses of Canon 7B(1)(c)

of the Pennsylvania Code of Judicial Conduct are constitutional, both on their face

and as-applied, when they are construed narrowly, as they must be in this case.

The court therefore will grant Defendants' motion for summary judgment, deny

Plaintiff's second motion for summary judgment, and vacate the preliminary

injunction in this case.

The court would be remiss, however, if it did not add a few words

about the effect of this decision on judicial elections in Pennsylvania.  The court

has narrowly construed Canon 7B(1)(c) of the Pennsylvania Code of Judicial

Conduct to keep it from being held unconstitutional under the First Amendment.

But the court has said nothing about the wisdom or propriety of the campaign

speech that the PFI and ACTION Questionnaires sought to elicit from judicial

candidates.  Many candidates refused to answer those questionnaires, because they

feared their answers would force them to recuse themselves from future cases, and

more importantly, cast doubt on the impartiality and integrity of Pennsylvania's courts.  The court wholeheartedly agrees with these sentiments.  It is the court's hope that this decision, Pennsylvania's recusal Canon, and judicial candidates' dedication to public service will adequately safeguard the impartiality and integrity of Pennsylvania's elected judiciary for years to come.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PENNSYLVANIA FAMILY INSTITUTE, INC., et al.,**<br>        **Plaintiffs,**<br><br>        **v.**<br><br>**JOHN R. CELLUCI, et al.,**<br>        **Defendants.** | **CIVIL ACTION NO. 07-1707** |

## ORDER

**AND NOW,** this 16th day of October, 2007, upon consideration of the parties' renewed cross-motions for summary judgment (Documents No. 40, 41, and 42), and their responses thereto (Documents No. 43 and 44), it is hereby **ORDERED** as follows:

1.  Plaintiffs' Second Motion for Summary Judgment (Documents No. 40 and 41) is **DENIED**;

2.  Defendants' Motion for Summary Judgment (Document No. 42) is **GRANTED**; and

3.  The preliminary injunction in this action is **VACATED**.[40]

**BY THE COURT:**

/s/ Marvin Katz

_____

**MARVIN KATZ, S.J.**

---

[40] The court's Order of May 14, 2007 (Document No. 16) enjoined and prohibited Defendants from enforcing the "pledges and promises clause" and the "commits clause" of Canon 7B(1)(c) of the Pennsylvania Code of Judicial Conduct against any candidate for judicial office, including an incumbent judge.